**THOMAS JEFFERSON UNIVERSITY and Jefferson University Physicians, formerly known as Jefferson Faculty Foundation, Appellants,**

v.

**Dr. Ronald WAPNER, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 31, 2006.

Filed June 29, 2006.

John F.X. O'Riordan, Philadelphia, for appellee.

BEFORE: McCAFFERY, PANELLA, and JOHNSON, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellants, Thomas Jefferson University ("TJU") and Jefferson University Physicians ("JUP") (collectively "Jefferson"), appeal from the trial court's denial of their post-trial motions for judgment *non obstante verdicto* ("JNOV") or a new trial following the jury's verdict in favor of Appellees, Dr. Ronald Wapner and Dr. Amy Levine.[1] Specifically, Appellants seek a determination of whether the trial court (1) erred in finding that Appellants failed to preserve their right to seek JNOV on their duty of loyalty claim; (2) erred when it instructed the jury regarding Appellee Wapner's counterclaim and subsequently denied Appellants' motion for JNOV on the counterclaim; and (3) abused its discretion in denying Appellants' request for a new trial based on the weight of the evidence. After careful consideration of the applicable law and thorough review of the certified record on appeal, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. In 2001, Jefferson filed suit against Drs. Wapner and Levine, both of whom had left Jefferson's employ and had begun working at a competitor hospital.[2] In its complaints, Jefferson alleged breach of duty of loyalty, breach of contract, tortious inter-

Ira A. Rosemau, Philadelphia, for appellants.

---

1. Although Dr. Levine is not named as an appellee in the caption, the causes of action against Drs. Wapner and Levine were consolidated for trial, and Appellants' issues on appeal concern both doctors; hence, our disposition constitutes a determinative ruling in Appellants' action against both doctors. No-

tably, the same attorneys represented both doctors during trial and throughout the course of this appeal.

2. Jefferson sued Dr. Levine in February 2001 and Dr. Wapner in August 2001, and the matters were consolidated for trial.

ference with existing and prospective contracts, misappropriation of trade secrets, and civil conspiracy. Drs. Wapner and Levine filed counterclaims against Jefferson, asserting violations of the Wage Payment and Collection Law, 43 P.S. §§ 260.1–260.12 ("WPCL"), as well as breach of contract and tortious interference claims.[3]

¶ 3 The record established that Drs. Wapner and Levine are two Philadelphia-based physicians who specialize in Maternal Fetal Medicine ("MFM"), also known as perinatology.[4] Dr. Wapner's employment with Jefferson commenced in 1972; in 1997, he was named Director of the MFM Division, and executed a five-year employment agreement in connection with that post. Dr. Levine's employment with Jefferson commenced in 1993. In 2000, she entered into a two-year employment agreement with Jefferson. Pursuant to their respective agreements, the doctors provided perinatal services at TJU and at various hospitals with which JUP had contracts, including Mercy Fitzgerald Hospital ("Mercy Fitzgerald") and Mercer Hospital ("Mercer").

¶ 4 According to Jefferson's complaints, both doctors entered into employment negotiations with Tenet Health System Hahnemann ("Hahnemann") in mid–2000, while they were still employed by Jefferson. Jefferson alleged that those negotiations included not only discussions regarding the transfer of the doctors' practices to Hahnemann, but also included discussions regarding the planning and feasibility of Hahnemann acquiring perinatal services

contracts with Mercy Fitzgerald and Mercer. Jefferson alleged that Dr. Wapner and Dr. Levine interfered with Jefferson's contracts with those hospitals by making direct contact with the hospitals' personnel and asking them to enter into contracts with Hahnemann. In addition, Jefferson alleged that the doctors provided confidential information to Hahnemann regarding Jefferson's business dealings, including copies of contracts and extensive financial data. Jefferson alleged that this and other conduct on the part of the doctors resulted in damages to Jefferson in excess of $700,000.

¶ 5 On October 23, 2003, a jury trial commenced, and the parties proceeded to present extensive testimonial and documentary evidence over the course of the next two weeks. On November 6th, the jury rendered a verdict against Jefferson with respect to both doctors, and found in favor of Dr. Wapner on his counterclaim for unpaid wages. Specifically, the jury found that Jefferson had withheld Dr. Wapner's salary, without a good faith basis for doing so, in violation of the WPCL.[5] The jury found that Jefferson owed no damages to Dr. Levine under the WPCL. Jefferson filed timely post-trial motions, seeking JNOV or a new trial. The trial court ultimately denied the motions, prompting the instant appeal.

¶ 6 Jefferson raises the following five issues in its Statement of the Questions Involved:

1. Whether the trial court erred by denying Jefferson [JNOV] against [Drs. Wapner and Levine] on the

---

**3.** Jefferson's claims against Dr. Wapner were more extensive than those lodged against Dr. Levine. Similarly, Dr. Wapner's counterclaims against Jefferson were more extensive than the counterclaim Dr. Levine raised. Dr. Levine's counterclaim included only a WPCL claim.

**4.** Jefferson describes perinatology as "helping women manage high-risk pregnancies." (Jefferson's Brief at 7).

**5.** Dr. Wapner withdrew his contract claims prior to jury deliberations.

breach of duty of loyalty claims because, at trial, it was conclusively established that Drs. Levine and Wapner breached their duties of loyalty, such that no two reasonable minds could disagree that the outcome should have been rendered in Jefferson's favor.

2. Whether Jefferson preserved its right to seek [JNOV] against [Drs. Wapner and Levine] on the breach of duty of loyalty claims when Jefferson requested that the trial court give a binding instruction on its breach of duty of loyalty claims, which request the trial court denied.

3. Whether the trial court erred by denying Jefferson [JNOV] on Dr. Wapner's claim that Jefferson did not have a good faith assertion of a right of setoff under Pennsylvania's Wage Payment and Collection Law, 43 P.S. [§ ] 260.1 *et seq.* (the "WPCL") as to Dr. Wapner's wages.

4. Whether the trial court erred by denying Jefferson a new trial based on the trial court's erroneous instruction allocating to Jefferson the burden of proving that it had a good faith assertion of a right of setoff as to Dr. Wapner's WPCL claims.

5. Whether the trial court erred by denying Jefferson's post-trial motion for a new trial because the verdict was against the weight of the evidence.

(Jefferson's Brief at 4).

¶ 7 Appellate review of a denial of JNOV is quite narrow. We may reverse only in the event the trial court abused its discretion or committed an error of law that controlled the outcome of the case. *Hutchinson v. Penske Truck Leasing Co.,* 876 A.2d 978, 984 (Pa.Super.2005) (citations and quotations omitted). "Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or Ill-will." *Id.*

> When reviewing an appeal from the denial of a request for judgment n.o.v., the appellate court must view the evidence in the light most favorable to the verdict[-]winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences.... Thus, the grant of a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict[-]winner. Furthermore, [i]t is only when either the movant is entitled to judgment as a matter of law or the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant that an appellate court may vacate a jury's finding.

*Hutchison ex rel. Hutchison v. Luddy,* 896 A.2d 1260, 1265 (Pa.Super.2006) (citations and quotations omitted).

¶ 8 Jefferson's first issue addresses the merits of its claimed entitlement to JNOV on its breach of duty of loyalty claims against both doctors. Relying primarily on *SHV Coal, Inc. v. Continental Grain Co.,* 376 Pa.Super. 241, 545 A.2d 917 (1988), *rev'd on other grounds,* 526 Pa. 489, 587 A.2d 702 (1991), Jefferson insists that Dr. Wapner's and Dr. Levine's "own conclusive admissions at trial" established that they had breached their duties of loyalty to Jefferson. Before we may address these assertions, however, we first must determine whether the request for JNOV was preserved. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). If not, the merits of the claim are irrelevant. Jefferson addresses preservation in

its second issue, and so we begin with that claim.

■ ¶ 9 While the opportunity to move for JNOV typically is preserved by the filing of a motion for a directed verdict, Jefferson properly notes that the right to seek JNOV likewise is preserved if the moving party requests and is denied a binding jury instruction. *See* Pa.R.Civ.P. 227.1(b)(1); *Hayes v. Donohue Designer Kitchen, Inc.* 818 A.2d 1287, 1291 n. 4 (Pa.Super.2003) ("[C]ases indicate that in order to preserve the right to request a JNOV post-trial[,] a litigant must first request a binding charge to the jury or move for directed verdict at trial."). Jefferson argues that it sought and was denied a binding instruction on the duty of loyalty, thereby preserving its right to seek JNOV post-trial.

■ ¶ 10 In its opinion disposing of post-trial motions, the trial court concluded that the instruction to which Jefferson referred was not a binding instruction. Further, the court reasoned, even if the proffered instruction were deemed binding in nature, the record reflects that Jefferson was not *denied* the instruction but, rather, agreed with the trial court that the instruction should not be given. Upon review of the record, we conclude that we need not determine whether or to what extent the instruction proffered by Jefferson constituted a binding instruction, since it is clear that Jefferson did abandon its request for the instruction and did agree with the trial court that another, different instruction be given in its place.

¶ 11 At the conclusion of the evidence in the case *sub judice,* the parties appeared before the court to discuss jury instructions and interrogatories. Noting that both sides had submitted their requests, the court informed the parties that it was "inclined to go forward with the instructions as proposed by the [doctors], and not by [Jefferson] because [the doctors' instructions] are much more concise and they are less than an argument from counsel as opposed to instructions in the law." (Notes of Testimony ("N.T."), 11/3/03, at 5). The court cautioned the parties, however, that its "inclination" was not absolute. The court invited each party to raise specific objections and stated that its preliminary inclination was "subject to modification with the input of both counsel." (*Id.*).

¶ 12 The court and the parties then embarked on a detailed assessment of each instruction proposed by the doctors. During that assessment, counsel for Jefferson frequently objected to instructions that the doctors had proposed. On many occasions, Jefferson requested that the trial court include one of Jefferson's proposed instructions, or a part thereof, in lieu of the language requested by the doctors. (*Id.* at 18). The trial court granted Jefferson's request in several instances and denied it in several others. (*Id.* at 19–21). Where the court ruled against one of the parties, the court noted that party's exception. When the issue of duty of loyalty was addressed, the following exchange took place:

> **The Court**: ... Next. Breach of duty of loyalty.
>
> [**Counsel for Jefferson**]: That one was okay, Your Honor, although we prefer ours. Have that noted for the record that one is okay.

(*Id.* at 26).

¶ 13 The trial court found that Jefferson's statements and its failure to ask for an exception with regard to the duty of loyalty instruction established that Jefferson "agreed at the time of the trial with the instruction given by the court." (Trial Court Opinion, dated October 22, 2004, at 7). Jefferson contests the court's finding

and draws our attention to previous cases wherein we concluded that preservation was satisfied even in the absence of a party taking exception to the court's ruling on jury instructions.

¶ 14 Jefferson maintains that our decision in *Brancato v. Kroger Co. Inc.*, 312 Pa.Super. 448, 458 A.2d 1377 (1983), supports its position. We do not agree. In *Brancato*, this Court specifically concluded that the plaintiffs had preserved their challenge to the trial court's rejection of their proposed instructions because their "counsel submitted 12 points for charge, 4 of which (numbered 1, 3, 6 and 7) were *denied* by the trial court. Thus, ... the Brancatos in fact had a specific exception on th[ese 4] point[s] for charge." *Id.* at 1380–81 (emphasis supplied) (citations and quotations omitted). Unlike in *Brancato*, the trial court here did not *deny* Jefferson's proposed duty of loyalty charge. Instead, the court noted its inclination to adopt the charges suggested by the doctors, and thereafter invited "input" from both parties' attorneys to modify the court's stated inclination. In offering its input on all of the proposals, Jefferson at times deferred to the court's preliminary inclination and at other times vigorously objected. Frequently, those vigorous objections were sustained and Jefferson was granted the instruction it sought. However, when the time came to discuss the duty of loyalty charge, Jefferson explicitly acquiesced in the trial court's use of an

alternate instruction, stating: "Have that noted for the record that one is okay." (N.T., 11/3/03, at 26).

■ ¶ 15 Jefferson argues that this Court recently confirmed the principle that "if the [trial] court rules against a particular jury charge, that party need not 'take exception' to the ruling." *Faherty v. Gracias*, 874 A.2d 1239, 1249 (Pa.Super.2005). We agree. But the record in this case does not include the trial court's *ruling* against the particular jury charge Jefferson is challenging. Rather, when Jefferson opted to acquiesce, it became unnecessary for the court to rule against Jefferson. *Id.* (stating mere submission of a particular charge is not enough; "a ruling must be made").

¶ 16 The trial court's preliminary statement that it was inclined to use the doctors' proposed instructions was not a ruling adverse to Jefferson; indeed, it was not a ruling at all, particularly in light of the fact that the court made it clear to the parties that each was entitled-and expected-to offer input and thereby help mold the instructions ultimately given.

¶ 17 The record clearly establishes that Jefferson was not denied the duty of loyalty instruction (binding or not) that it sought. Instead, Jefferson explicitly agreed not to pursue the instruction it initially proffered, despite the clear opportunity and ability to do so.[6] As a result, we determine that Jefferson did not pre-

---

6. Jefferson argues in its Reply Brief that its participation at the charging conference should not be used to support a finding of waiver in connection with its request for a binding instruction because "counsel should not have to chose [sic] between potential hidden waivers and meaningful participation in a charging conference." (Jefferson's Reply Brief at 3). Our review of the record leads us to conclude that Jefferson's acquiescence in this case was not "hidden." The purpose of the charging conference was to flesh out the pro-

priety of the instructions suggested by the parties, as is the case at most charging conferences. Both parties properly took advantage of that opportunity and, at times, Jefferson raised objections to the court's proposed rulings. The court, in turn, issued some rulings in satisfaction of Jefferson's concerns. We simply do not agree with Jefferson that holding it to its explicit assertions on the record will serve to "discourage counsel from engaging in meaningful dialogue with the trial judge at a charging conference." (*Id.*)

serve its right to seek JNOV on the duty of loyalty claim post-trial.

¶ 18 Jefferson attempts to nullify the effect of its failure to have preserved the issue by asserting that "Pennsylvania law holds that ... the Superior Court should review of [sic] the merits of the issues raised even if there may have been a technical waiver under Pa.R.Civ.P. 227.1(b)(1)." (Jefferson's Brief at 35). Drawing our attention to the fact that the trial court assessed the merits of the duty of loyalty issue in its opinion, Jefferson notes three cases of this Court wherein we have addressed a waived issue based solely on the fact that the trial court addressed the issue in its opinion. *See Capital Care Corp. v. Hunt,* 847 A.2d 75 (Pa.Super.2004); *Ty–Button Tie, Inc. v. Kincel and Co., Ltd.,* 814 A.2d 685 (Pa.Super.2002); *Soderberg v. Weisel,* 455 Pa.Super. 158, 687 A.2d 839 (1997). While at first blush Jefferson's argument seems persuasive, our review of the cases relied upon leads us to conclude that they are inapplicable here and so cannot be the basis for a merits analysis in this case.

¶ 19 The *Capital Care* case involved a party's failure to file a motion for a directed verdict on the issue of proof of damages. The *Ty–Button* case concerned a party's failure to file a motion for a directed verdict on the issue of insurance coverage. In both cases, this Court noted the appealing party's failure to preserve its claim, but nonetheless addressed the merits based on, but without discussion of, the exception in the *Soderberg* case. *Capital Care, supra,* 847 A.2d at 84 n. 4; *Ty–Button, supra,* 814 A.2d at 689–90. Thus, we look to *Soderberg* to determine if application of its rule is appropriate in the case *sub judice.*

¶ 20 *Soderberg* was a quiet title matter wherein the trial court entered judgment for the plaintiffs and held that they were entitled to relocate an easement they owned. The court also held that the defendants were required to pay for half the cost of relocation. The defendants appealed and, among other things, argued that the allocation of cost was improper. The plaintiffs/appellees asserted that the issue was waived for failure to have raised it at any time before post-trial motions. The *Soderberg* panel looked to a prior decision of this Court, *Takes v. Metropolitan Edison Co.,* 440 Pa.Super. 101, 655 A.2d 138 (1995) (*en banc* ), *rev'd in part,* 548 Pa. 92, 695 A.2d 397 (1997), in deciding whether to consider the merits of the claim on appeal:

> The purpose of Rule 227.1(b) is to provide the trial court with an opportunity to review and reconsider its earlier rulings and correct its own error.
>
> * * *
>
> In *Takes, supra,* we explained that when an issue is first formally raised post-trial and the trial court concludes that the issue was nonetheless preserved, we would defer to the trial court's determination and address the substance of the appeal. We stated, "[i]t would be an inappropriate function of a reviewing court to substitute its own subjective interpretation of the record in order to find waiver when it was 'clear' to the trial court that the objection ... was 'preserved.'" We therefore, find that because the trial court was given the opportunity to correct its errors and because the trial court determined that these issues were not waived, we are able to address the [defendants'] contention that the trial court abused its discretion in allocating one-half of the costs of relocation to them.

*Soderberg, supra,* 687 A.2d at 845 (citations omitted).

¶ 21 Thus, the *Soderberg* exception to the standard rule of preservation is based on (1) the trial court's conclusion that an issue had been preserved when it appeared to the appellate court that it had not; and (2) the fact that the trial court took advantage of an opportunity to review its prior ruling and correct its own error. In this case, neither of these factors is present. First, the trial court here explicitly found that Jefferson *did not* preserve the duty of loyalty issue by way of a binding instruction. The court concluded that Jefferson acquiesced to the jury instruction offered by its opponent. As our discussion above illustrates, that finding is amply supported by the record. Second, while the trial court certainly discussed the merits of Jefferson's claim in its opinion, its efforts cannot be construed as an opportunity to review a prior ruling or correct an error it made. As discussed above, Jefferson did not request a binding instruction that the trial court erroneously denied. Rather, Jefferson submitted a proposed instruction and, when afforded the opportunity to articulate why the proposed instruction was appropriate, affirmatively abandoned it in favor of an alternate instruction. Therefore, there could have been no error committed by the trial court, as that court was not asked to rule on the instruction, and, in fact, issued no ruling at all.

¶ 22 We note that even if it were the case that the *Soderberg* exception applied to every matter in which a trial court addressed an unpreserved issue in its opinion, we nonetheless would conclude that the exception is inappropriate here.[7] This is not a garden-variety waiver case in which Jefferson failed to lodge an exception following the trial court's adverse ruling on a requested jury instruction. Rather, it is a case in which Jefferson *affirmatively approved* the instruction given by the trial court. Under these circumstances, Jefferson simply is not entitled to appellate review.

¶ 23 Because we have decided that Jefferson's second issue—preservation of its JNOV rights on duty of loyalty—fails, we need not address its first issue, the merits of its request for JNOV on the duty of loyalty claim. We proceed then to address Jefferson's third and fourth issues on appeal, that is, whether Jefferson should have been granted JNOV on Dr. Wapner's claim for damages under the WPCL and whether the trial court properly instructed the jury with regard to the burden of proof in such a claim.[8]

7. We note that in *Takes,* the case upon which *Soderberg* relied, our Supreme Court reversed the panel's decision to consider a waived issue. *Takes,* 548 Pa. 92, 100, 695 A.2d 397, 401 (1997). The Court cautioned that a "trial court may not eliminate the entire purpose of making a record and invalidate the directive in *Dilliplaine* simply by addressing an issue" and the appellate court need not blindly defer to a trial court that does so. *Id.* Further, *Soderberg's* continued application is questionable in light of the development of the law in a similar context, namely the mandate of Pa. R.A.P. 1925(b), as espoused in *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998). Our Supreme Court has stated unequivocally that where an issue has been waived because the appellant failed to include it in his or her Rule 1925(b) Statement, the appellate court

may not address its merits, even if the trial court addressed the merits in its opinion. *See Commonwealth v. Castillo,* 585 Pa. 395, ——, 888 A.2d 775, 780 (2005) (explicitly disapproving of *Commonwealth v. Ortiz,* 745 A.2d 662 (Pa.Super.2000), which permitted review of a waived issue because the trial court addressed it in its opinion). The rationale for this rule is plain: whether an appellate court reviews an issue cannot be based on the conduct, decision or whim of the trial court; rather, it must be based on the actions of the appellant in properly preserving issues for review. *Id.* at 779–80.

8. We observe that the trial court found Jefferson did preserve its JNOV rights with respect to these issues on the record during trial, and

¶ 24 Dr. Wapner's counterclaim for unpaid wages was based on his assertion that although he had resigned from Jefferson with proper notice and in compliance with policy, Jefferson had failed to pay him for the final five weeks of his employment. As a result, he sought relief under the WPCL. This Court has articulated the purpose and effect of the WPCL:

> Pennsylvania enacted the WPCL to provide a vehicle for employees to enforce payment of their wages and compensation held by their employers. The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. The WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.

*Hartman v. Baker,* 766 A.2d 347, 352 ( Pa.Super.2000) (citations and quotations omitted).

¶ 25 The WPCL is not only a vehicle for recovery of unpaid wages; it also provides for damages in the event an employer withholds compensation in the absence of good faith. 43 P.S. § 260.10. Thus, for instance, if an employer withholds wages based on a dispute with the employee that would result in a set-off, the employer's reliance on the set-off must be held in good-faith. *Id.* Otherwise, the employee is entitled to additional, liquidated damages pursuant to the statute, which provides as follows:

Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe[e] of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable ... and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe[e] shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.

■■■ ¶ 26 Jefferson defended against Dr. Wapner's counterclaim by asserting that it properly had withheld Dr. Wapner's wages based on the allegations contained in its complaint and the damages owed to it as a result. Jefferson characterized the withholding of wages as a good faith set-off under § 260.10. Over Jefferson's objections, the trial court instructed the jury that the burden of establishing good faith fell to Jefferson. On appeal, Jefferson renews its challenge to this charge, claiming that the court erred in allocating the burden to Jefferson as employer.[9]

¶ 27 Jefferson's claim requires us to consider the proper interpretation of § 260.10, making the issue a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Krebs v. United Refining Company of Pennsylvania,* 893 A.2d 776, 787 (Pa.Super.2006). Both parties concede that the statute is silent on the issue of which party

we defer to that finding by the court. (Trial Court Opinion at 8, n. 5).

9. Although Jefferson's third claim addresses whether good faith was established and its fourth claim addresses the allocation of burden issue, we address the burden issue first.

bears the burden of proof with respect to whether the employer acted in good faith. The trial court relied on our prior decision in *Hartman,* wherein the panel held, without discussion, that the burden fell to the employer. *Hartman, supra,* 766 A.2d at 353–54 (stating employer required to prove good faith by clear and convincing evidence). Subsequent case law has also relied on *Hartman* to hold that the burden of proof lies with the employer in a WPCL claim. *See Walker v. Washbasket Wash & Dry,* 2001 WL 770804, ¶ 17 (E.D.Pa.2001).

¶ 28 Jefferson urges us to reject *Hartman* and hold that the employee bears the burden of establishing his or her employer's lack of good faith. Even if we were to assume that we have the authority to reach a conclusion contrary to *Hartman,* we nonetheless would decline to do so. It is both logical and appropriate to allocate to the employer the burden of proving good faith. Certainly, the information tending to establish good faith in a WPCL matter is in the possession of the employer. Thus, the *Hartman* court's conclusion was a sensible one: the party in possession of the evidence to establish its good faith has the burden of proof. Thus, we conclude that the trial court did not err when it instructed the jury that it was Jefferson's burden to establish its own good faith conduct in withholding Dr. Wapner's wages.

¶ 29 With regard to whether Jefferson met its burden of establishing good faith, we agree with the trial court that a grant of JNOV on this issue simply was not warranted. Jefferson does not refer to specific testimony or documentary evidence in support of its claim that good faith was established as a matter of law. Rather, it refers to "the voluminous evidence" as its basis for relief. (Jefferson's Brief at 41). Our own review of the record, however, leads us to conclude that the issue could not be decided as a matter of law in Jefferson's favor, as there was evidence that Jefferson withheld Dr. Wapner's wages well before it had any information about the doctor's allegedly improper conduct.

¶ 30 In finding that JNOV was improper on this issue, the trial court noted the testimony of TJU's Dean, Dr. Thomas J. Nasca. (Trial Court Opinion at 14). Dean Nasca told the jury that when Dr. Wapner first stated his intention to leave Jefferson, Dean Nasca "had no reason to doubt" that Dr. Wapner had complied with all of his obligations to Jefferson. (N.T., 10/27/03, at 200). Further, the Dean confirmed that it was not until several months after Jefferson had withheld Dr. Wapner's wages that "information came to bear ... that led [Jefferson] to be concerned about Dr. Wapner's compliance with the terms of his previous employment with Jefferson."[10] (*Id.* at 196).

¶ 31 The record amply demonstrates that the issue of good faith was properly a question for the jury because it was neither established as a matter of law, nor a matter about which two reasonable minds could not disagree. Further, the jury's finding of a lack of good faith on Jefferson's part is supported by testimony from Jefferson's own witness. Thus, we determine that the trial court acted properly in denying Jefferson's request for JNOV on the issue of good faith.

¶ 32 Jefferson's final claim addresses the weight of the evidence. Seeking a new trial, Jefferson challenges the jury's verdicts in favor of Drs. Wapner and

---

**10.** Jefferson withheld Dr. Wapner's wages beginning in November 2000. The information Dean Nasca referred to came to light sometime after the early spring of 2001. (N.T., 10/27/03, at 196).

Levine on all of Jefferson's claims, each one of which was separately considered and rejected by the jury.

Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. An appellant is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way.

*Ty–Button Tie, Inc.*, *supra*, 814 A.2d at 692 (citation omitted).

¶ 33 In its brief, Jefferson sets out a list which details conduct engaged in by Drs. Wapner and Levine, and which conduct Jefferson insists establishes that the verdict "shocked one's sense of justice" because of its failure to grasp the magnitude of the doctors' conduct. (Jefferson's Brief at 46–48). The trial court, however, reviewed the evidence, including evidence that conflicted with that brought forth by Jefferson, and rejected Jefferson's weight claim based on the entirety of the record. The trial court specifically noted the allegations Jefferson made during the trial, the extensive testimony given by the doctors to rebut those allegations, and the jury's duty to determine the weight and credibility of all the evidence presented by the parties. (Trial Court Opinion at 9–13). Our review of the record confirms that the trial court correctly identified, in large part, the evidence important to the jury's determination. Jefferson's counsel vigorously presented its case over a two-week period and opposing counsel just as vigorously defended the matter. The parties presented conflicting evidence that the jury, as fact-finder, was authorized, indeed required, to accept or reject. Upon review of the entire record and in deference to our standard of review, we determine that the trial court did not abuse its discretion by finding that the verdict did not shock the conscience. Thus, we conclude that the court made no error in refusing to grant a new trial based on the weight of the evidence. Jefferson's weight claim fails.

¶ 34 For all of the reasons set forth above, we conclude that Jefferson is not entitled to appellate relief. The trial court's refusal to grant JNOV on Jefferson's duty of loyalty claim was proper, as was its refusal to grant JNOV on Dr. Wapner's counterclaim under the WPCL. Further, the trial court's instruction to the jury regarding good faith under the WPCL was correct and its decision to deny Jefferson a new trial based on the weight of the evidence shall not be disturbed. Accordingly, we affirm the judgment.

¶ 35 Judgment affirmed.