J-A02019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHESTNUT CREEK CONSTRUCTION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD MURPHY AND MAGGIE | : | |
| MURPHY A/K/A MARGARET MURPHY | : | |
| | : | No. 452 EDA 2016 |
| Appellant | : | |

Appeal from the Judgment March 15, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 09-04149

| | | |
|---|---|---|
| CHESTNUT CREEK CONSTRUCTION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EDWARD MURPHY AND MAGGIE | : | |
| MURPHY, A/K/A MARGARET MURPHY | : | |
| | : | No. 551 EDA 2016 |

Appeal from the Judgment Entered March 15, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 09-04149

BEFORE: OTT, J., RANSOM, J., and FITZGERALD, J.*

MEMORANDUM BY RANSOM, J.: **FILED MAY 04, 2017**

In this consolidated appeal, Chestnut Creek Construction ("Chestnut")

appeals from the judgment entered March 15, 2016,[1] in its favor and against

---

[1] Chestnut and Murphy purported to appeal from the January 8, 2016 order
denying their motion for post-trial relief; however, entry of final judgment
*(Footnote Continued Next Page)*

---

* Former Justice specially assigned to the Superior Court.

Edward Murphy and Maggie Murphy a/k/a Margaret Murphy (collectively, "Murphy") in the amount of $87,821.21. Murphy cross-appeals from the judgment against them. We affirm.

The trial court outlined the relevant procedural and factual history as follows:

The instant appeals arise out of a joint venture between the parties to subdivide and develop a parcel of property located at 1252 Meetinghouse Road in Lower Gwynedd, Pennsylvania (the "Property.") [In January 2005], the parties entered into a Construction and Land Development Agreement (the "Agreement") the purpose of which was clearly set out in its preamble, as follows:

This Agreement is executed by and between Edward Murphy and Maggie Murphy (Owner) and Chestnut Creek Construction, Inc. (Builder), for the purpose of subdividing the property located at 1252 Meetinghouse Road, Gwynedd, PA. 19426 (Property) into three lots and constructing custom homes on two newly subdivided lots, which will be named lots #2 and #3 (New Lots). The Owner will retain ownership of Lot #1, which currently contains his existing residence, and retains all rights thereon for said Lot #1. This Property is currently a 5.5 acre tract situate between Route 202 and Evans Road, Lower Gwynedd Township (Township), Montgomery County, Pennsylvania.

In six paragraphs thereafter, the Agreement, in relevant part, provided *inter alia* that: legal Ownership was to remain with

(Footnote Continued) ——————————

was required to make the instant matter properly appealable. *See* Pa.R.A.P. 301. The Montgomery County Prothonotary entered judgment on March 15, 2016, thereby perfecting this Court's jurisdiction. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of appealable order shall be treated as filed after such entry and on the day thereof.").

Owner ([Murphy]) until the new lots were sold; Builder ([Chestnut]) was to work with Owner to obtain subdivision approval, the costs of which were to be paid by Builder and reimbursed from proceeds of the sale of the new lots and homes thereon; Builder would improve the new lots, build new homes on each for which Builder would be paid costs of improvements and construction, plus 10% overhead, plus 10% profit; "Owner and Builder agree to jointly acquire a construction loan for the total amount of the Construction Costs and improvement costs. Funds from construction loan will be disbursed to Builder periodically to cover the costs of the construction. Any fees or costs associated with the construction loan, including interest payments, shall be borne equally by Owner and Builder," and; from proceeds of [] new lots and homes constructed thereon, Owner shall receive $450,000.00 for price of lots; Builder shall receive costs, plus overhead, and profit and balance to be divided equally. ([Notes of Testimony,] N.T. 6/8/15, at Ex. P-1 ("Agreement"), 11/10/15). []

Pursuant to the Agreement, [Chestnut] (Builder) promptly sought subdivision and land development approvals from Lower Gwynedd Township (the "Township") as indicated by [Chestnut's] submission of an Application for Approval of Plans dated January 31, 2005 (N.T. 6/8/15, at 15, Ex. P-2 ("Township Application for Approval of Plans"), 11/10/15). In preparing the Application, [Chestnut's] owner and president, Jim Held testified that he had hired an engineer, [] who presented a set of plans, and then attended and participated in numerous meetings with the Township's planning commission, engineer, and zoning officer. (N.T. 6/8/15, at 16 -17). [In September 2006], by virtue of [Chestnut's] efforts, the Township entered into a land development agreement with [Chestnut] as the developer and [Murphy] as the owners. [In October 2008], the site subdivision plan was filed with the Montgomery County Recorder of Deeds, thereby effectuating subdivision of the Property.

[In February 2007], however, without [Chestnut's] knowledge or consent (and in breach of the parties' Agreement), [Murphy] executed a note and mortgage in the amount of $3.375M [] which was recorded against the Property. [Murphy] fell into arrears on the mortgage and eventually lost the Property in foreclosure. (Prior to [Murphy's] instant above-referenced refinancing, and at the time the parties executed the Agreement,

the Property was encumbered by a mortgage of approximately $1.6M. (N.T. 6/8/15, at 162 -63.))

[In February 2009], [Chestnut] instituted the instant action by filing a two–count complaint, sounding in breach of contract and unjust enrichment. The complaint asserted, *inter alia*, that [Murphy] breached the Agreement by virtue of their refinancing and default thereon, and sought reimbursement of costs expended and future lost profits as a result of that breach. []

After accepting service of the complaint[,] [] [Murphy] thereafter failed to timely respond. [In August 2009], [Chestnut] sought entry of default judgment with the filing of the requisite praceipe [asking the Prothonotary to] [] ["][a]ssess [d]amages at a trial limited to a determination of the amount of the damages, as per [Pa.R.C.P.] 1037(b)(1) . . .["] Upon [Chestnut's] filing of the above-referenced praecipe, the Montgomery County Prothonotary entered a default judgment in favor of [Chestnut] []. Thus, by virtue of [Murphy's] default, they admitted a material breach of the Agreement by encumbering the Property with a $3.375M mortgage without the consent or knowledge of [Chestnut], defaulting on that financing and losing the Property in foreclosure. ([Complaint] at ¶¶ 113-16, 2/11/09). Despite the serious implications of this judgment, Defendants failed to seek relief from the entry of judgment until more than a year and a half later. Then, [in February 2011], [Murphy] filed a petition to open, which [was denied in October 2011]. [] [In March 2013], the Superior Court affirmed the trial court's denial of the petition, and [] the Pennsylvania Supreme Court denied [Murphy's] petition for allowance of appeal [in November 2013]. Upon remittal, the [] Montgomery County Court Administration [was directed] to place the matter in the trial list i.e., bench trial for assessment of damages.

[] [In June 2015], the case proceeded to an assessment of damages bench trial []. By order dated September 21, 2015, a verdict [was entered] in favor of [Chestnut] and against [Murphy] in the amount of $87,821.21, plus costs and interest at 6% from the date of the Judgment thereon until paid.

Trial Court Opinion, 7/26/2016, at 1-5 (footnotes and unnecessary capitalization omitted).

Thereafter, Murphy timely filed a post-trial motion for judgment *non obstante verdicto* ("JNOV") or a new trial in the alternative. **See** Pa.R.C.P. 227.1. Defendant's Post Trial Motion for New Trial or in the Alternative Judgment Notwithstanding the Verdict ("Murphy Motion for JNOV"), 9/30/2015. In this motion, Murphy asserted that the court's decision was against the weight of the evidence, specifically claiming that Chestnut failed to show (1) that they were entitled to payment in the event that no buyers were willing to develop the lots; (2) that Chestnut made any effort to mitigate their damages; and generally (3) failed to show that Murphy was the cause of Chestnut's damages.

Chestnut responded and filed a motion for JNOV as well, asserting that the trial court's decision was contrary to law because (1) Murphy was erroneously permitted to present a defense to liability for damages; (2) Chestnut should have received the full amount of damages claimed as their evidence was uncontroverted; and (3) the court improperly accepted Murphy's testimony of real estate market conditions at the relevant time. Plaintiff's Post Trial Motion for Judgment Notwithstanding the Verdict ("Chestnut Motion for JNOV"), 10/6/2015.

Following briefing and argument on the parties' cross motions, the trial court denied both parties' motions for post-trial relief in January 2016. In February 2016, the parties timely filed cross-appeals from the trial court's denial of their respective motions for post-trial relief. Both parties timely

filed court-ordered Pa.R.A.P. 1925(b) statements, and the court filed a responsive opinion in July 2016.

On appeal, Chestnut presents the following issues for our review:

1. Did the [c]ourt err in allowing [Murphy] to present a defense which went to the merits of the case and was not restricted to the amount of damages as per [Pa.R.C.P. No.] 1037?

2. Did the [c]ourt err in not awarding [Chestnut] the full measure of damages in the absence of any testimony to the contrary?

Chestnut's Brief at 3.[2]  Murphy presents the following issues for our review:

1. Did the trial court properly deny [] [Chestnut's] post trial motion since it had not proven it's [*sic*] claim for lost profits?

2. Did the trial court improperly deny [Murphy's] motion for judgment NOV and a new trial as a result of its award of subdivision costs to [] [Chestnut]?

_____

[2] Chestnut's brief is soundly out of compliance with the Pennsylvania Rules of Appellate Procedure.  Chestnut flouts Rule 2111 by omitting a scope of review and standard of review and omitting a copy of the statement of errors complained of on appeal.  Chestnut provides a woefully deficient statement of the case, a section required by Pa.R.A.P. 2117.  Moreover, Chestnut has failed to comply with Pa.R.A.P. 2119, in that its argument is not divided into as many parts as there are questions presented, and its argument is devoid of any citation to the record.  Additionally, as Murphy notes, Chestnut failed to include a reproduced record with its brief.  Chestnut does not qualify for any of the exceptions listed in Rule 2151, which would excuse this error, and has not requested a waiver from the requirement to file the record.  However, Murphy did not move for dismissal of Chestnut's appeal on this ground, as permitted by Rule 2188.  This potpourri of failures by Chestnut has complicated our review of Chestnut's arguments. *See In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012) ("[W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived."); Pa.R.A.P. 2101, 2119.

Murphy's Brief at 4.

Following trial, both parties filed post-trial motions seeking judgment notwithstanding the verdict and, in Murphy's case, a new trial. We review a denial of JNOV in the following manner:

> When reviewing an appeal from the denial of a request for [JNOV], the appellate court must view the evidence in the light most favorable to the verdict-winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences.... Thus, the grant of a [JNOV] should only be entered in a clear case and any doubts must be resolved in favor of the verdict-winner. Furthermore, [i]t is only when either the movant is entitled to judgment as a matter of law or the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant that an appellate court may vacate a jury's finding.

**Thomas Jefferson Univ. v. Wapner**, 903 A.2d 565, 569 (Pa. Super. 2006) (internal citations and quotations omitted, formatting modified.).

When considering a challenge to the trial court's ruling denying a motion for a new trial, we are guided by the following standard of review:

> We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

**Underwood ex rel. Underwood v. Wind**, 954 A.2d 1199, 1206 (Pa. Super. 2008) (citing **Gbur v. Golio**, 932 A.2d 203, 206–207 (Pa. Super. 2007)).

Collectively, the parties dispute the damages awarded by the trial court. The calculation of damages is a question of fact, determined by the fact finder. *Hatwood v. Hosp. of the Univ. of Pennsylvania*, 55 A.3d 1229, 1240 (Pa. Super. 2012) (stating that the calculation of damages is a question of fact).

We review a court's assessment of damages according to the following standard:

> The duty of assessing damages is within the province of the factfinder and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence. In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence. If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages.

*Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.*, 98 A.3d 645, 659-60 (Pa. Super. 2014) (citations, brackets, and quotation marks omitted).

It is well-established that in a breach of contract action, damages must be proved with reasonable certainty. *Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010) (citing *Ferrer v. Trustees of the University of Pennsylvania,* 825 A.2d 591, 610 (Pa. 2002)). A damage award should place the non-breaching party as nearly as possible in the same position it would have occupied had there been no breach. *Lambert v. Durallium Products Corporation*, 72 A.2d 66, 67 (Pa. 1950).

The measure of damages for breach of contract is compensation for the loss sustained. *Id*. However, "[a]s a general rule, damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." ***Spang & Co. v. U.S. Steel Corp.***, 545 A.2d 861, 866 (Pa. 1988).

> Damages for lost profits, like other contract damages, may not be awarded when the evidence leaves the trier of fact without any guideposts except his or her own speculation. Sufficient evidence must be introduced to permit a reasonably certain estimate of the amount of anticipated profits lost due to the breach.

***Merion Spring Co. v. Muelles Hnos. Garcia Torres, S.A.***, 462 A.2d 686, 695 (Pa. Super. 1983).

In its first claim, Chestnut asserts that the trial court erred in permitting Murphy to introduce a defense of liability rather than strictly disputing calculation of damages. Chestnut Creek Brief at 6-8. Chestnut characterizes Murphy's evidence of the real estate valuation as going to the cause of the loss instead of factoring into the calculation of damages. *Id*. Chestnut is mistaken. The issue before the trial court was limited to the award of damages, and Murphy properly challenged Chestnut's evidence by introducing expert testimony which established that the amount Chestnut claimed in lost profits was belied by real estate market conditions. N.T., 6/8/2015 at 120-46. The trial court considered this expert testimony, along with the other evidence presented, and concluded that Chestnut's claim of

lost profits was overly speculative. *See* Trial Court Opinion, 7/26/2016, at 13-16. Accordingly, the court did not err. ***Spang & Co.***, 545 A.2d at 866; ***Merion Spring Co.***, 462 A.2d at 695.

Second, Chestnut asserts its evidence of damages was unrebutted. Chestnut Creek Brief at 7-14. This claim is without merit, as it is simply not supported by the record. As mentioned *supra*, Murphy challenged Chestnut's evidence with expert testimony, suggesting that Chestnut's evidence of profit loss was speculative. Assessment of damages is a question of fact within the discretion of the fact finder. ***Hatwood***, 55 A.3d at 1240. The trial court found Murphy's evidence credible and persuasive, as such, we discern no abuse of discretion. ***Id***.

For these reasons, the court did not err or otherwise abuse it's discretion in denying Chestnut's motion for JNOV. ***Thomas Jefferson Univ.***, 903 A.2d at 569.

In light of our disposition of Chestnut's claims, we need not address Murphy's first issue. Murphy argues in its second issue that the trial court improperly denied its post-trial motions for JNOV and a new trial. We first address Murphy's contention that the trial court erred in denying its motion for JNOV, where Murphy asserted that the court's decision was against the weight of the evidence.

We reiterate that the cause of the breach of the underlying contract is admitted by the default judgment entered against Murphy, and Murphy is

precluded from re-litigating that fact. *Wilson v. Maryland Cas. Co.*, 105 A.2d 304, 312 (Pa. 1954) (recognizing that a default judgment operates as an admission by the defendant of the truth of all facts well-pleaded); *see* Pa.R.C.P. 1037(b)(1). In the instant case, there was no liquidated damages provision indicating a "sum certain" or language outlining damages calculations in the event of a breach. *See* Construction and Land Agreement. Accordingly, the trial court was responsible for ascertaining what, if any, damages were due to Chestnut. Pa.R.C.P. 1037(b)(1).

Here, the trial court outlined the "ample evidence of expense" incurred by Chestnut as presented at the damages hearing and found that Chestnut sustained $87,821.21 in damages. *See* Trial Court Opinion, 7/26/2016, at 8-13; *see also Hatwood*, 55 A.3d at 1240. This figure was based on (1) the fact that Murphy was in breach of the contract; (2) the detailed testimony of Jim Held explaining the money Chestnut had expended in furtherance of the agreement; (3) an independent accountant's report and accompanying testimony describing the sums expended by Chestnut; and (4) the reasonable conclusion of the court that subdivision costs would be paid from the sale of the home prior to the distribution of profits to either party. Trial Court Opinion, 7/26/2016, at 10-13.

Conversely, the court found that the profit losses claimed by Chestnut were too speculative, reasoning:

> Simply put, [Chestnut] failed in its proof to establish that profits would have been realized absent [Murphy's] breach. Unlike

- 11 -

subdivision costs which were to be distributed from the sale proceeds first, profits, according to the Agreement, and by their very nature, were to be distributed last. [Chestnut] produced little evidence beyond Mr. Held's projections that the sale of the lots with luxury homes at the time they would be marketed pursuant to the Agreement would have realized a sale price sufficient to pay subdivision costs, construction costs (including financing cost thereon), $450,000.00 per lot to [Murphy], and thereafter, profits to be split equally between [Chestnut] and [Murphy] in that order as called for in the Agreement.

Trial Court Opinion, 7/26/2016, at 13-15. In conjunction with the lack of lost profits evidence presented by Chestnut, Murphy presented an expert on real estate valuation, who opined that a change in market conditions undercut real estate values at the prospective time of sale. N.T., 6/8/2015 at 120-46. As such, the court was left without enough evidence to permit a reasonably certain estimate of anticipated profit loss, and the court was not permitted to award damages based on pure speculation. *Merion Spring Co.*, 462 A.2d at 695.

Here, the court's findings were supported by the evidence of record, therefore the court did not abuse its discretion in awarding subdivision costs expended and declining to award lost profits. *Newman Dev. Grp. of Pottstown, LLC*, 98 A.3d at 659-60. Accordingly, when viewed in the light most favorable to the verdict-winner, we conclude that the court properly denied Murphy's motion for JNOV. *Thomas Jefferson Univ.*, 903 A.2d at 569.

Applying our standard of review for denial of a new trial to the above facts, we conclude that the award of damages for subdivision costs was also

supported by the evidence of record. Thus, we discern no abuse of discretion and therefore no error which would warrant the grant of a new trial. ***Underwood ex rel. Underwood***, 954 A.2d at 1206.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/4/2017