Douglas SIMMONS, Appellant,

v.

Craig COBB, Appellee.

Superior Court of Pennsylvania.

Argued March 15, 2006.

Filed Aug. 16, 2006.

Timothy L. Salvatore, York, for appellant.

JoAnne E. Kinzel, Camp Hill, for appellee.

BEFORE: STEVENS, McCAFFERY, and PANELLA, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, Douglas Simmons, appeals from the judgment entered in the York County Court of Common Pleas following the denial of his post-trial motions. Specifically, Appellant, the plaintiff below, asks us to determine whether the trial court improperly denied his pretrial request to introduce evidence that he was receiving social security disability ("SSD") benefits. The trial court determined that Appellant could not present such evidence due to the "collateral source rule." Following careful review, we conclude that the "collateral source rule" was not applicable in this case. Nonetheless, we determine that a new trial is not warranted; hence, we affirm the judgment.

¶ 2 The factual and procedural history of this matter, as gleaned from the certified record, is as follows. On February 7, 2001, Appellant and Appellee, Craig Cobb, were involved in an automobile accident. Thereafter, Appellant filed suit against Appellee and the parties proceeded to a jury trial in April 2005. At trial, Appellee admitted that his negligence caused the accident. Therefore, the only issues in dispute were whether Appellee's negligence was the cause of Appellant's injuries and what, if any, were the resulting damages. Appellant sought compensation for past lost earnings in the amount of approximately $88,000; future lost earnings and lost earning capacity in the range of $276,000 to $569,000; and past medical expenses totaling $4,900.

¶ 3 The crux of Appellant's claim for damages was that he was substantially disabled due to the injuries he suffered as a result of the accident. In support of this assertion, Appellant presented the deposition testimony of three of his treating physicians: Joseph A. Fuller, D.C., Steven J. Triantafyllou, M.D., and John W. Eilers, D.O., as well as the live testimony of a vocational evaluator, Paul A. Anderson, D.Ed. In an effort to counter Appellant's claims, Appellee offered the deposition testimony of Perry A. Eagle, M.D., and the live testimony of another vocational evaluator, John S. Risser, M.A., both of whom

opined that Appellant was not disabled for more than a few months following the accident.

¶ 4 Mr. Anderson, Appellant's vocational expert, engaged in a comprehensive analysis of Appellant's condition, which included a diagnostic interview, vocational tests, and the review of several documents and records. According to Mr. Anderson's report, among the ten different records that he reviewed were Appellant's SSD records. Likewise, Mr. Risser also conducted an in-person evaluation of Appellant. In his report, Mr. Risser listed the SSD decision as one of the nineteen documents and records he reviewed for purposes of evaluating Appellant.

¶ 5 Prior to trial, via a letter dated April 1, 2005, Appellant requested that he be permitted to introduce evidence of his receipt of SSD benefits while examining his expert witness, Mr. Anderson, and while cross-examining Appellee's expert, Mr. Risser. The trial court denied Appellant's request and noted its decision to prohibit any reference to Appellant's SSD benefits for the record. (Trial Transcript, dated April 4, 2005 at 9).

¶ 6 After deliberating,[2] the jury awarded Appellant $16,900 in economic damages and $11,100 in non-economic damages for a total of $28,000.[3] Appellant filed post-trial motions wherein he sought a new trial based on the trial court's exclusion of the SSD evidence. Following oral argument, the trial court issued an order denying Appellant's motion. This timely appeal followed in which Appellant raises three issues for our review:

1. Did the trial court err as a matter of law in barring the introduction of testimony concerning [Appellant's] favorable Social Security Disability determination during examination of the parties' vocational experts?

2. Did the trial court abuse its discretion in barring the introduction of testimony concerning [Appellant's] favorable Social Security Disability determination during examination of the parties' vocational experts?

3. Was the error committed by the trial court prejudicial?

(Appellant's Brief at 3).

¶ 7 We begin by noting the high threshold Appellant must meet in order to prevail. Our Court will not reverse an order granting or denying a motion for a new trial absent a gross abuse of discretion or error of law by the trial court. *Schweikert v. St. Luke's Hospital of Bethlehem* 886 A.2d 265, 268 (Pa.Super.2005). Indeed, if there is any support in the record for a trial court's decision to deny the motion, we must affirm. *Carrozza v. Greenbaum*, 866 A.2d 369, 382 (Pa.Super.2004). In addition, this Court may affirm on any basis and need not rely upon the reasoning supplied by the trial court. *In re Petition to Remove Constable David Visoski*, 852 A.2d 345, 346 (Pa.Super.2004). Further, with regard to the admission of evidence, our standard of review is well settled:

---

**2.** We note that over the course of their deliberations, the jury submitted several questions to the trial court, reproduced here *verbatim*, including: (1) "Number one, has payment been received from any other source, if so what amounts by Plaintiff. Two: Has Plaintiff been labeled disabled by Social Security; if no, why not." (Oral Argument Transcript, dated June 21, 2005 at 9). The trial court responded by instructing the jury, "You can only consider the evidence of record in your deliberations." *Id.*

**3.** The verdict was molded to the amount of $25,906, per court order entered April 22, 2005.

When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Hutchinson v. Penske Truck Leasing Co.,* 876 A.2d 978, 984 (Pa.Super.2005) (citation omitted).

¶ 8 Appellant's specific allegation of error is that he should have been permitted to examine his own vocational expert, Mr. Anderson, about the expert's reliance on Appellant's SSD report in formulating his expert opinion. (Appellant's Brief at 10, 12). Further, Appellant asserts that the trial court erred by precluding him from cross-examining Mr. Risser, Appellee's expert, regarding his review of Appellant's SSD report. Appellant sought to question Mr. Risser about the fact that Appellant's SSD status stood in stark contrast to Mr. Risser's conclusion that Appellant was not disabled. *Id.*

¶ 9 The trial court denied Appellant's requests based on the collateral source rule. Citing *Nigra v. Walsh,* 797 A.2d 353 (Pa.Super.2002), the court found that the provisions of the rule operated to preclude the introduction of any evidence of Appellant's SSD benefits. We do not agree. The collateral source rule, which is intended to protect tort victims, "provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer." *Id.* at 356 (quotation omitted). Thus, this rule

"prohibits a defendant in a personal injury action from introducing evidence of the plaintiff's receipt of benefits from a collateral source for the same injuries which are alleged to have been caused by the defendant." *Collins v. Cement Express, Inc.,* 301 Pa.Super. 319, 447 A.2d 987, 988 (1982).[4]

¶ 10 In the case *sub judice,* it was not the defense that sought to bring the evidence of SSD benefits to the jury's attention. Rather, it was Appellant, the plaintiff below, who wanted the jury to know that he was receiving these federal benefits, which clearly was as a result of a determination that Appellant was, indeed, disabled within the meaning of the Social Security Act. Thus, the purposes underlying the collateral source rule—protection of the plaintiff and prevention of a benefit to the alleged wrongdoer—simply were not implicated here. The rule applies to defense offers of evidence, not to those made by a plaintiff. Thus, we conclude that the trial court erred when it relied on the collateral source rule to deny admission of the evidence Appellant proffered.

¶ 11 Since the evidence at issue was not inadmissible based on the collateral source rule, the question now is whether Appellant is entitled to a new trial at which he should be permitted to offer the evidence. However, as noted above, in order to constitute reversible error, an evidentiary ruling "must have been harmful or prejudicial to the complaining party." *Hutchinson, supra* at 984. Appellant asserts that the harm he suffered was his inability to question two of the experts in this case, Anderson and Risser, both of whom noted Appellant's SSD status in

---

4. In *Collins,* the plaintiff/appellant argued on appeal that defense questioning on the topic of SSD benefits was prejudicial pursuant to the collateral source rule. Upon review of the record, this Court held that the collateral source rule did not entitle the appellant to a new trial because appellant himself mentioned the SSD benefits first, thereby opening the door for defense counsel to continue questioning on the topic. *Id.* at 988.

their own reports. Appellant relies on P.R.E. 705, which he characterizes as "requiring [an expert] to testify concerning the basis of his opinion." (Appellant's Brief at 9). We need not determine whether or to what extent an expert may testify regarding his or her reliance on a party's SSD status because the record in this case demonstrates that both experts placed little, if any, reliance on Appellant's SSD report.

 . ¶ 12 The SSD report was one of ten records that Mr. Anderson considered, and in his eleven-page expert report there are but two paragraphs devoted to the SSD material, one of which quotes the physical limitations found by the administrative law judge, and the other of which merely utilizes a mathematical formula employed by the Social Security Administration. (R.R. at 564a, 570a–571a). With respect to Mr. Risser's expert report, which is ten pages in length, the reference to Appellant's SSD status appears in a single sentence, to wit, "Pocahontas County, WV[,] is an extremely rural (even for West Virginia) area providing few job opportunities of any kind, which this disability examiner believes was a significant factor in Mr. Simmons receiving a favorable [SSD] decision on 7/11/03."[5] (R.R. at 585a). In light of this record evidence, as well as the trial court's accurate observation that each expert was "effectively and competently examined and cross-examined" (Order, filed July 20, 2005, at 2), we conclude that both experts' reliance on Appellant's SSD status was so negligible as to be nearly non-existent. As a result, Appellant's lack of opportunity to

---

**5.** Of course, Mr. Risser cannot be said to have "relied" on the federal agency's finding of disability in reaching his own opinion, as Mr. Risser was of the opinion that Appellant *was not disabled.*

**6.** Our decision today is not intended in any way to be a comment on the probative value of the evidence Appellant sought to present.

question either expert regarding that expert's reliance on Appellant's SSD status in arriving at a determination of disability was neither harmful nor prejudicial and certainly does not warrant a new trial.[6] *Hutchinson, supra,* at 984.

¶ 13 For all of the above reasons and after careful review of the relevant case law, we hold that any error the trial court made in precluding questioning regarding Appellant's SSD status was harmless. Accordingly, we affirm the judgment.

¶ 14 Judgment affirmed.

Nor does our ruling contemplate the potential prejudice to Appellee of that same evidence. Rather, we conclude that the exclusion of the evidence, albeit on an improper basis, does not constitute reversible error because it did not work to Appellant's prejudice under the specific facts presented in this case.