J-A09008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BRADFORD LARKIN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NEW JERSEY TRANSIT RAIL OPERATIONS, INC., (NJT) | |
| Appellant | No. 3409 EDA 2013 |

Appeal from the Judgment Entered January 3, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 2670 August Term, 2011

| | |
|---|---|
| BRADFORD LARKIN, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NEW JERSEY TRANSIT RAIL OPERATIONS, INC., (NJT) | |
| Appellant | No. 3410 EDA 2013 |

Appeal from the Judgment Entered January 3, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 2670 August Term, 2011

BEFORE:  BOWES, DONOHUE, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 16, 2015**

New Jersey Transit Rail Operations, Inc. ("New Jersey Transit" or "railroad") appeals from the judgment entered on a jury verdict and award of attorney's fees and costs in favor of its employee, Bradford Larkin.  Mr.

Larkin commenced the action against his employer pursuant to the Federal Employers' Liability Act ("FELA"), for injuries he sustained when the train that he was operating collided with an abandoned vehicle on the tracks.[1] After careful review, we affirm in part and reverse in part.

On July 1, 2010, Mr. Larkin was the engineer on a New Jersey Transit train traveling eastbound on the northeast corridor from Trenton, New Jersey, and approaching the Hamilton, New Jersey station. Upon seeing a vehicle on the tracks, he pulled the emergency brake to stop the train, a procedure known as dumping. Nonetheless, the train struck the vehicle, which was later revealed to be stolen and abandoned. Mr. Larkin sustained injuries to his neck, shoulder, wrist, and elbow in the incident.

Mr. Larkin filed this FELA action, alleging, *inter alia,* that New Jersey Transit was negligent in failing to secure the tracks in the area of the collision and/or warn its employees to reduce speed due to the presence of a crossing and frequent trespassers in that area. The case was consolidated with the FELA action filed by Claressa Ferguson, the assistant conductor on the train.

---

[1] The underlying case was consolidated for discovery and trial with a similar action filed by the train's assistant conductor, Claressa Ferguson. New Jersey Transit filed an appeal in that case at No. 3369 EDA 2013, which also has been assigned to this panel. Two of the three issues are identical.

A jury trial commenced on June 10, 2013. During opening statements, counsel for New Jersey Transit told the jury that, "Mr. Larkin's own expert will say the reason he's not looking for work is because he's receiving disability." N.T. Trial Vol I., 6/10/13, at 57. Counsel for co-plaintiff Claressa Ferguson promptly objected to the reference to disability and the trial court sustained the objection and ordered the comment stricken. *Id*. at 57-8. No request for curative instruction or motion for mistrial was made.

Mr. Larkin was the first witness for the plaintiffs. At 4:02 p.m., after considerable direct examination, the court took a short break and excused the jury. At that time, counsel for Mr. Larkin objected to defense counsel's earlier reference to Mr. Larkin receiving disability benefits and pointed out that this was the subject of an unresolved motion *in limine*. He argued that counsel's reference to this collateral source was so prejudicial as to be incurable, and requested a mistrial. The court declined to grant a mistrial. Instead, it prohibited any further reference to disability benefits and advised the parties that it would give very explicit instructions to the jury not to consider "any kind of collateral source of benefit" at the close of the case. *Id*. at 105. While acknowledging the reference was improper, the trial court stated that it intended to cure it.

Defense counsel's improper reference was revisited on June 13, 2013, in light of a report that a male juror was overheard commenting to fellow jurors on June 11th that, "he's on worker's compensation." N.T. Trial,

6/13/13, at 9. Shortly thereafter, counsel for Mr. Larkin renewed his earlier motion for a mistrial premised on the assumption that this was a reference to Mr. Larkin and involved collateral source benefits. The trial court deferred its ruling and permitted two of plaintiffs' expert witnesses to testify. At the hearing on the motion for mistrial, witnesses confirmed that a juror was discussing worker's compensation during Mr. Larkin's testimony and that the jurors had disregarded the trial court's instruction not to discuss the case until deliberations. The trial court declared a mistrial and held the plaintiffs' request for costs and fees in abeyance.

A new trial commenced on July 1, 2013. The plaintiffs mounted a double-pronged offensive. They maintained that the railroad was negligent in failing to secure the area of the collision or warn the engineers of the danger presented by trespassers who frequented that crossing. The plaintiffs also alleged that the railroad's practice of requiring its engineers to multitask, *i.e.*, refer to special bulletins, timetables and other paperwork while operating the train, violated Northeast Operating Rules Advisory Committee ("NORAC") Rule 958, which required engineers to keep a constant lookout ahead and to regulate the speed of the train if distracted. Plaintiffs' expert, railroad safety consultant Paul Byrnes, testified that New Jersey Transit was not teaching compliance with or enforcing NORAC Rule 958.

The following events at the second trial are important to our resolution of the issues on appeal. New Jersey Transit sought to cross-examine Dr. Robert Wolf, Mr. Larkin's economic expert, regarding Mr. Larkin's statement to him that he did not seek employment because he did not wish to lose entitlement to disability benefits. The plaintiffs objected based on the collateral source rule. The railroad maintained that it was admissible to show Mr. Larkin's failure to mitigate his damages, but the trial court disagreed and sustained the objection.

At the charging conference on July 11, 2013, the court advised of its intention to instruct the jury in accordance with the standard Modern Federal Jury Instruction 89-18, which provided that the jury could find the defendant railroad negligent if "it instructed its employees to perform tasks or procedures or methods which it knew in the exercise of reasonable care should have known would result in injuries." N.T. Trial, 7/11/2013, at 53. That charge led into plaintiffs' proposed charge regarding NORAC 958 and the duty of the railroad to enforce its own operating rules. New Jersey Transit duly noted an exception to both instructions. The court expressly declined to give a binding instruction on negligence *per se*, finding that the testimony created a jury issue on NORAC Rule 958. It did, however, advise of its intention to instruct the jury that if it found that New Jersey Transit violated NORAC Rule 958, it must determine that the railroad was negligent *per se*.

The jury subsequently returned with a verdict. As the jury foreperson read the amount of the award for Ms. Ferguson, Mr. Larkin's co-plaintiff, there was a reaction from the jury. Counsel for Ms. Ferguson, realizing that the amount of the award reflected only the stipulated damages for wage loss and did not include damages for pain and suffering, suggested to the court in the presence of the jury that the jury misunderstood the instructions. The jury foreperson verbally confirmed counsel's suspicions. Counsel then added that the jury did not award any damages for pain and suffering. In light of the confusion, the trial court refused to accept Ms. Ferguson's verdict; the verdict as to Mr. Larkin was not revealed. Instead, the court re-instructed the jury regarding damages and directed it to resume its deliberations. New Jersey Transit sought a mistrial based on counsel's remarks. The mistrial was denied, and the jury ultimately returned a verdict of $679,334 verdict in favor of Mr. Larkin and $400,000 for Ms. Ferguson.

New Jersey Transit filed a post-trial motion seeking a new trial, which was denied by the court on November 6, 2013. That same day, the court granted Mr. Larkin's motion for counsel fees and costs incurred as a result of the June 17, 2013 mistrial, and ordered defense counsel's law firm to pay

$16,689.45 to the law firm representing Mr. Larkin.  Order, 11/6/13, at 1.[2]

New Jersey Transit appealed, complied with the trial court's order to file a

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and

the trial court authored its Rule 1925(a) opinion.  New Jersey Transit

presents three issues for our review:

1. Whether the trial court erred in refusing to permit counsel for New Jersey Transit Rail Operations, Inc., to cross-examine Plaintiff's vocational–economic expert regarding the failure of Plaintiff to mitigate his damages.

2. Whether the trial court erred in charging the jury that New Jersey Transit Rail Operation, Inc., was negligent per se for failing to train/enforce NORAC Operating Rule 958 under the Code of Federal Regulations because such claim is precluded by the Federal Railroad Safety Act.

3. Whether the trial court erred in awarding costs and attorney's fees to Larkin after declaring a mistrial.

Appellant's brief at 4.

Mr. Larkin's first issue herein is whether a new trial is warranted as a

result of the trial court's ruling precluding New Jersey Transit from cross-

examining Dr. Robert Wolf about Mr. Larkin's statement to him regarding

disability benefits.  In reviewing such a ruling,

> Our Court will not reverse an order granting or denying a motion
> for a new trial absent a gross abuse of discretion or error of law
> by the trial court. Indeed, if there is any support in the record

---

[2]  A similar order was entered that same day ordering counsel for New Jersey Transit to pay counsel for Ms. Ferguson's attorney's fees and costs in the amount of $25,961.32.

for a trial court's decision to deny the motion, we must affirm. In addition, this Court may affirm on any basis and need not rely upon the reasoning supplied by the trial court.

**Simmons v. Cobb**, 906 A.2d 582, 584 (Pa.Super. 2006) (internal citations omitted). Where the issue involves the admission or exclusion of evidence, "we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. " **Id**.; **see also Jacobs v. Chatwani**, 922 A.2d 950, 965 (Pa.Super. 2007) (scope of cross-examination is within sound discretion of trial court). In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." **Simmons**, **supra** at 584-85.

The deposition of Robert Wolf was taken for use at trial. Dr. Wolf had prepared an expert report, a copy of which had been provided to the defense, in which the expert mentioned that Mr. Larkin said he did not want to look for work because he would lose certain disability benefits he was receiving. On cross-examination, counsel for New Jersey Transit asked Dr. Wolf to confirm that Mr. Larkin had made such a statement. Counsel for Mr. Larkin objected to this line of inquiry based on the collateral source rule. The witness, who was permitted to answer, confirmed that conversation. Deposition, Robert Wolf, Ed.D., 6/3/13, at 55. The trial court subsequently sustained Mr. Larkin's objection to this line of inquiry and that testimony was not placed before the jury.

On appeal, New Jersey Transit contends that this cross-examination did not violate the collateral source rule and that its exclusion was reversible error. It claims that Mr. Larkin's testimony that he had to work to support his family and that he was unable to continue working for New Jersey Transit, as well as Dr. Wolf's testimony on direct examination, opened the door to cross-examination about Mr. Larkin's failure to mitigate damages because he was receiving disability. New Jersey Transit cites **Santa Maria v. Metro-North Commuter R.R.**, 81 F.3d 265, 273 (2d Cir. 1996), for the proposition that evidence of collateral sources is admissible if the plaintiff puts his financial status at issue. Furthermore, it alleges that the trial court's ruling precluded the jury from learning that Dr. Wolf's damage estimate rested on a faulty premise.[3] Appellant's brief at 22.

Mr. Larkin counters that **Griesser v. National Railroad Passenger Corp.**, 761 A.2d 606 (Pa.Super. 2000), and **Eichel v. New York Central Railroad**, 375 U.S. 253 (1963) inform our review. In **Griesser**, this Court acknowledged that a state court handling a FELA claim applies federal substantive law and that the collateral source rule is a "substantive precept of federal common law," and not a rule of evidence. **Id**. at 609. Mr. Larkin

---

[3] New Jersey Transit failed to develop any argument in support of this averment.

relies upon this language in **Griesser** in urging us to review the trial court's decision for an error of law and not for an abuse of discretion.

**Eichel** was a FELA action by a railroad employee against his employer. The employer contended that the trial court erroneously excluded evidence of the employee's receipt of disability pension benefits under the Railroad Retirement Act of 1937, maintaining that such evidence was relevant for the express "purpose of impeaching the testimony of [the employee] as to his motive for not returning to work and as to the permanency of his injuries." **Eichel**, **supra** at 254. In upholding the exclusion of such evidence, the United States Supreme Court noted that, in the context of FELA, evidence of receipt of collateral source benefits involves "a substantial likelihood of prejudicial impact." **Id**. at 255. Furthermore, it found that the potential for misuse by a jury "clearly outweighs the value of this evidence." **Id**. The Court added, "it would violate the spirit of the federal statutes if the receipt of disability benefits under the . . . Act . . . were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act." **Id**. Mr. Larkin cites **Eichel** for the proposition that evidence of collateral source benefits is not admissible to show failure to mitigate.[4]

---

[4] In **Quintero v. United States**, 2010 U.S. Dist. LEXIS 128874, 14-15 n.3 (E.D. Cal. 2010), the district court noted that **Eichel** involved case-specific risk versus probative value analysis and that the case predated the Federal Rules of Evidence. Thus, it concluded that **Eichel** did not prohibit collateral

*(Footnote Continued Next Page)*

*See also Lee v. Consolidated Rail Corp.*, 1995 U.S.Dist. LEXIS 18199 (E.D. Pa. 1995) (excluding evidence that plaintiff had incentive to retire early even if he had not been injured).

Mr. Larkin also rejects New Jersey Transit's contention that evidence of his economic status opened the door to such evidence. He relies upon *Finley v. National Railroad Passenger Corp*., 1 F.Supp. 2d 440 (E.D. Pa. 1998), for the proposition that to "open the door," a plaintiff must introduce the subject of collateral source benefits. Neither Mr. Larkin's testimony that he was unable to work as an engineer and that he had five children to support nor Dr. Wolf's testimony on direct examination implicated benefits from collateral sources. Moreover, Mr. Larkin maintains that the fact that the statement was contained in the expert's report does not open the door.

The trial court herein relied heavily upon *Eichel*, *Finley*, and *Griesser* in concluding that introduction of disability benefits in order to prove a failure to mitigate damages constituted error where, as here, Mr. Larkin did not open the door to such testimony. We agree. The collateral source rule is intended to protect tort victims by providing that "payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer." *Simmons*, *supra* at 585. Thus, "the rule prohibits a

_(Footnote Continued)_ ————————————

source evidence in every instance. *Accord McGrath v. Consolidated Rail Corp.* 136 F.3d 838, 841 (1st Cir. 1998) ("We do not read *Eichel* as requiring the per se exclusion of collateral source evidence in FELA cases").

- 11 -

defendant in a personal injury action from introducing evidence of the plaintiff's receipt of benefits from a collateral source for the same injuries which are alleged to have been caused by the defendant." *Id*. (quoting *Collins v. Cement Express, Inc.*, 447 A.2d 987, 988 (Pa.Super. 1982)). It is only where a plaintiff offers such evidence that cross-examination regarding the collateral source is proper.

Mr. Larkin did not offer any evidence of receipt of disability benefits and, thus, he did not open the door to collateral source evidence. New Jersey Transit's citation to *Santa Maria*, *supra*, for the proposition that the door is opened when a plaintiff merely introduces evidence of his economic status is a blatant misrepresentation of that holding. Santa Maria argued on appeal that the trial court erroneously denied him a new trial where it had permitted opposing counsel to inquire regarding his receipt of benefits under the Railroad Retirement Act. The court of appeals did not reach the issue since it awarded a new trial to Santa Maria on other grounds.

We agree with the trial court that *Finley* is particularly instructive. Finley sued his employer seeking damages for injuries that allegedly included mental impairment. Defense counsel told the jury in opening statements that Finley informed an examining psychologist that he intended to apply for a disability pension. Counsel pointed out that Finley had retired and was receiving a disability pension, the implication being that the pension was Finley's motivation for establishing the disability for which he was

seeking compensation against his employer. Finley's statement was contained in the psychologist's report that the railroad sought to introduce. When Finley moved for a mistrial based on counsel's comments, the defense maintained that the reference to Finley's statement was not offered as proof of failure to mitigate damages or malingering, but as an admission of Finley's state of mind in making a claim of mental impairment. The trial court disagreed and granted the mistrial, relying upon **Eichel**, **Tipton v. Socony Mobil Oil Co.**, 375 U.S. 34, 37 (1963), and **Lee v. Consolidated Rail Corporation**, 1995 U.S. Dist. LEXIS 18199 (E.D.Pa. 1995).

In **Griesser**, **supra**, this Court found persuasive the reasoning of **Eichel**, **Finley**, **Lee**, **Tipton**, and language in **Mahon v. Reading Co.**, 367 F.2d 25, 30 (3rd Cir. 1966) ("any benefits paid by the Railroad Retirement Board . . . cannot be taken advantage of by defendant to mitigate the damage or otherwise"), for the exclusion of collateral source evidence. We find no abuse of discretion in the trial court's ruling precluding the cross-examination.

Next, New Jersey Transit objects to the court's charge that it "was negligent *per se* for failing to train/enforce NORAC Operating Rule 958 under the Code of Federal Regulations because such claim is precluded by the Federal Railroad Safety Act." Appellant's brief at 4 (italics added). In essence, New Jersey Transit is asserting that the Federal Railroad Safety Act ("FRSA") preempted Mr. Larkin's claim.

- 13 -

Preliminarily, we note that the trial court did not give a binding instruction regarding negligence *per se*. The court charged the jury that **if** it found that New Jersey Transit failed to train its engineers in NORAC Rule 958, it must find New Jersey Transit negligent *per se*. N.T. Trial, 7/12/13, at 56 (emphasis added). This instruction was consistent with federal substantive law. **See CSX Transp., Inc. v. McBride**, 131 S. Ct. 2630 n.12 (U.S. 2011) ("A railroad's violation of a safety statute, however, is negligence per se") (citing **Kernan v. American Dredging Co.**, 355 U.S. 426, 438 (1958)). Thus, the issue of whether New Jersey Transit failed to train its engineers was placed squarely before the factfinder.

Secondly, as Mr. Larkin correctly observes, New Jersey Transit did not raise the issue of preemption by the FRSA in its post-trial motions. **See** Pa.R.C.P. 227.1(b)(2) ("post-trial relief may not be granted unless the grounds therefor. . . are specified in the motion."). Nor did it identify this issue in its Pa.R.A.P. 1925(b) concise statement of issues complained of on appeal, and consequently, the trial court did not address this issue in its Pa.R.A.P. 1925(a) opinion. The issue is waived.[5]

In somewhat of a *non-sequitur*, New Jersey Transit suggests that, if this Court rejects its preemption argument, then the trial court abused its

---

[5] As Ms. Ferguson pointed out, neither the FRSA nor preemption was ever mentioned in the trial court.

- 14 -

discretion in refusing to permit Al Zahn to testify that New Jersey Transit enforced NORAC Rule 958 and to interpret the black box data from the accident. Mr. Larkin counters that this issue also is waived since it was not explicitly raised in the railroad's statement of questions. While there is merit in Mr. Larkin's contention that this argument is not suggested by the statement of the issue nor reasonably contemplated within it, we will address it. *See* Pa.R.A.P. 2116(a). Nonetheless, no relief is due.

This issue implicates an evidentiary ruling. "The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed on appeal only upon a showing that the court abused its discretion." *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa.Super. 2008). In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." *Simmons*, *supra* at 584-85.

New Jersey Transit called Al Zahn, its chief road foreman, to testify. In response to plaintiffs' request for an offer of proof, the railroad proffered as follows. Mr. Zahn would testify "about the duties of an engineer while operating the train" and the Major Incident Event Recorder, the so-called "black box" data regarding this incident. N.T. Trial, 7/10/13, at 18. Additionally, he would discuss the information contained on the data recorder, namely speeds and braking, for the last thirty seconds prior to the stopping of the train. He would also testify regarding the enforcement of

NORAC rules generally, and in particular, as to Mr. Larkin during the relevant time period.

Contrary to New Jersey Transit's representation, the court permitted Mr. Zahn to testify that he reviewed data from the black box to "monitor engineers for compliance [with] all kinds of NORAC rules," from 2005 until 2011. *Id*. at 11. Mr. Zahn testified further that New Jersey Transit enforces NORAC rules and trains its engineers to comply with those rules. He testified that he personally observed train operations to ensure that the rules were followed and would reprimand engineers who took their eyes off the track to read bulletins or timetables. Mr. Zahn also took issue with Mr. Byrnes' conclusion that an engineer briefly looking down and reading bulletins constituted multitasking or that it was conduct violative of NORAC rules. Although Mr. Zahn did not specifically reference NORAC Rule 958, the trial court did not preclude him from doing so.[6] Hence, the record does not provide factual support for this assignment of error.

Next, the railroad alleges that the court committed reversible error in precluding Mr. Zahn from interpreting data from the black box and providing a second-by-second account of the speed of the train for the thirty-two

---

[6] Mr. Zahn was not permitted to testify that he reprimanded Mr. Larkin on two prior occasions for distractions while driving the train. The court found such evidence to be unfairly prejudicial in light of New Jersey Transit's position that Mr. Larkin was in compliance with all operating rules on the day in question. New Jersey Transit does not challenge that ruling on appeal.

seconds prior to the collision based on the absence of an expert report. *See* Pa.R.C.P. 4003.5(b). It contends that the plaintiffs cannot claim unfair surprise or lack of notice since they had the data and provided Mr. Byrnes with a copy of the download for his review. Appellee's brief at 34.

We find no merit in the railroad's position. Absent an expert report, the plaintiffs were not apprised of the scope of Mr. Zahn's testimony and the need for their own expert. While Mr. Byrnes was given a copy of the download, there is nothing in the record to suggest that his expertise extended to black box data interpretation. Additionally, the plaintiffs objected at trial that the proffered testimony was irrelevant and cumulative. Although the trial court did not exclude it on that basis, our review of the record and briefs reveals that the railroad has yet to explain the significance of the proffered data interpretation to its case. Failing that, we find no basis for concluding that its exclusion constituted reversible error that warrants a new trial.

New Jersey Transit's final challenge is to the trial court's November 6, 2013 award of $16,689.45 in costs and attorney's fees to Mr. Larkin. The law is well settled that, "[t]he trial court has great latitude and discretion with respect to an award of attorney's fees pursuant to a statute." *Scalia v. Erie Ins. Exchange*, 878 A.2d 114, 116-117 (Pa.Super. 2005) (citing *Cummins v. Atlas R.R. Construction Co*., 814 A.2d 742, 746 (Pa.Super. 2002)). Our review of a trial court's order awarding attorney's fees to a

litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award. *Lucchino v. Commonwealth*, 809 A.2d 264 (Pa. 2002); *Miller v. Nelson*, 768 A.2d 858 (Pa.Super. 2001). If the record supports a trial court's finding of fact that a litigant violated the conduct provisions of the relevant statute providing for the award of attorney's fees, such award should not be disturbed on appeal. *Thunberg v. Strause*, 682 A.2d 295, 299-300 (Pa. 1996).

We examine in detail the events at the first trial that culminated in the mistrial and the subsequent award of counsel fees and costs. On June 10, 2013, the trial court met with counsel to resolve some of the motions *in limine* that would likely be implicated in counsel's opening statements in the case. Defense counsel took the lead in identifying those motions that required immediate rulings. He did not mention a motion *in limine* filed by Mr. Larkin seeking to preclude the defense from referencing the fact that Mr. Larkin was on disability or a similar motion by Ms. Ferguson to preclude reference to her prior claims.

Nonetheless, during New Jersey Transit's opening statement, counsel told the jury that although Mr. Larkin's counsel provided a "big number" for his client's wage loss, "Mr. Larkin's own expert will say the reason he's not looking for work is because he's receiving disability." N.T. Trial Vol I., 6/10/13, at 57. Counsel for Ms. Ferguson promptly objected to the reference to disability and the trial court sustained the objection and ordered

the comment stricken.  She did not request a curative instruction or seek a mistrial.  Mr. Larkin did not object.

A moment later, in reference to Ms. Ferguson, defense counsel told the jury that she complained of pain in the same shoulder in several prior claims against the railroad.  He added, "In fact her own doctor will look at her report and say, I wasn't aware of the fact that her doctor from the last claim permanently disabled her because of that shoulder."  *Id*. at 59.  Ms. Ferguson's counsel objected and the trial court cautioned defense counsel "We're going to move on, counsel."  *Id*.

Mr. Larkin was the first witness called to testify by the plaintiffs.  At 4:02 p.m., after considerable direct examination, the court advised the jury that there would be a short break and the jury was excused.  Ms. Ferguson's counsel placed on the record an objection to defense counsel's reference to prior claims and asked the court to rule on her outstanding motion *in limine*. At this point, counsel for Mr. Larkin registered an objection to defense counsel's reference in opening statement to Mr. Larkin's receipt of disability benefits and pointed out that this, too, was the subject of a motion *in limine* that had not been ruled upon.  Counsel for Mr. Larkin argued that defense counsel's reference to this collateral source was so prejudicial as to be incurable and only then requested a mistrial.

The trial court admonished defense counsel for failing to highlight the motion *in limine* regarding disability benefits "as one that needed to be

resolved prior to openings." *Id*. at 106. The court stated that it would review the motion *in limine* and "[f]or now, we're not going to have any reference to claims as it relates to the injury." *Id*. at 108.

Defense counsel, in an attempt to justify his reference to disability benefits, advised the court that he "clearly would never raise that unless I thought they had opened the door." *Id*. He maintained that Mr. Larkin's expert opened the door when he opined in his deposition that it made no financial sense for Mr. Larkin to find work since he was receiving disability payments. *Id*. at 108. The trial court rejected counsel's excuse, noting that the door could not have been opened because no evidence had been presented to the jury, and added that it might preclude the jury from hearing such testimony. However, the court declined to grant a mistrial. Instead, it prohibited any further reference to disability benefits and advised the parties that it would give very explicit instructions to the jury not to consider "any kind of collateral source of benefit" at the close of the case. *Id*. at 109. The reference was improper, but the trial court stated that it intended to cure it.

Trial continued on June 11, 2013, was in recess on June 12, 2013, and on June 13, 2013, the court entertained additional argument on the remaining motions *in limine*. At the conclusion of argument, counsel for Mr. Larkin introduced the fact that a juror was overheard by Attorney Robert Goggin making comments about worker's compensation on June 11, 2013,

and that Mr. Goggin reported the situation to the court. N.T., 6/13/13, at 38. Counsel for Mr. Larkin advised the court that he believed defense counsel's comment regarding Mr. Larkin's receipt of disability benefits and the juror's reference to worker's compensation were "tied together," and renewed his motion for mistrial. *Id*. at 39. The court announced that it would entertain the motion for mistrial, but prior to suspending trial, it permitted plaintiffs' expert witnesses Dr. Carl Berkowitz and Mr. Paul Byrnes to present live testimony.

Both plaintiffs filed motions for mistrial and a hearing on the motions was held on June 17, 2013. Attorney Goggin reported the following. Mr. Larkin was on the stand. The court and counsel were at sidebar discussing an objection. Mr. Goggin, located five to six feet from the jury box, was leafing through a trial binder to find an exhibit. From that location, he "distinctly heard one of the jurors say he's on worker's comp, assuming talking about Mr. Larkin." N.T. Mistrial Motion, 6/17/13, at 9. He was unable to pinpoint the juror, but identified a male voice. *Id*. at 8. Mr. Goggin added that, after he sat down, he observed about half of the jurors turned toward each other engaged in conversation and comparing notes. Anthony DiGiulio, an associate of counsel for Ms. Ferguson, testified that he did not hear the substance of any conversation but he did hear talking, particularly during Mr. Larkin's direct testimony. Juror No. 6, a male, was

talking to Jurors Nos. 5 and 7, "showing notes and pretty animated in his conversation." *Id*. at 11.

Following argument of counsel, the trial court concluded that it would constitute reversible error to proceed with the trial under the circumstances, and it granted the motion for mistrial. It stated on the record that "mere mention" of collateral sources is "a fatal blow to the trial." *Id*. at 28. That, coupled with the fact that the juror's discussion was a violation of the court's prohibition against sharing thought processes prior to deliberation, led to the court's conclusion that "to go further with this case would amount to reversible error." *Id*. at 29. The trial court held under advisement the matter of plaintiffs' costs and attorney's fees. It later awarded counsel fees and costs pursuant to 42 Pa.C.S. § 2503(7), which permits such an award if a participant's conduct during the pendency of the matter is "dilatory, obdurate or vexatious,"[7] and its own inherent power to control the proceedings.

---

[7] That statute provides in pertinent part:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

42 Pa.C.S. § 2503.

New Jersey Transit contends first that the trial court did not make the requisite finding that its counsel's conduct was "obdurate, vexatious or acting in bad faith" to support an award of attorney's fees under § 2503(7). It maintains that the trial court merely characterized counsel's reference to Mr. Larkin's receipt of disability benefits as error.

The court first noted that "[i]t is well-settled law that collateral source benefits should not be introduced absent a plaintiff offering information on such a subject[.]" Trial Court Opinion, 6/17/14, at 8. Despite that fact, and although a motion *in limine* had been filed to preclude reference to collateral source benefits, defense counsel "told the jury that 'Mr. Larkin's own expert will say the reason he's not looking for work is because *he's receiving disability*.'" ***Id***. at 9 (quoting N.T. Trial Vol I, 6/10/13, at 57) (emphasis in original). The court went on to find that "the grant of a mistrial was warranted when counsel for Appellee overheard the jury speaking about worker's compensation." ***Id***. Since the mistrial "was granted as a direct result of the remarks of Appellant's counsel, the court held it was clearly proper" to award attorney's fees and costs. ***Id***. at 10.

We find support for New Jersey Transit's position that an award of counsel fees pursuant to 42 Pa.C.S. § 2503(7) must be based on a specific finding by the trial court that the conduct is vexatious, obdurate, or dilatory. ***Township of South Strabane v. Piecknick***, 686 A.2d 1297, 1299 (Pa. 1996); ***Kulp v. Hrivnak***, 765 A.2d 796 (Pa.Super. 2000). Dilatory conduct

- 23 -

occurs "where the record demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." *In re Estate of Burger*, 852 A.2d 385, 391 (Pa.Super. 2004). Arguably, causing a mistrial and the delay associated with a new trial may be considered dilatory conduct.

The trial court also predicated its award on "its inherent power to conduct its business . . . in an orderly manner, taking such action against an Attorney, who after all is an officer of the court, as may be reasonably necessary[.]" Trial Court Opinion, 6/17/14, at 11 (citing *Coburn v. Domanosky*, 390 A.2d 1335, 1338 (Pa.Super. 1978)). In *Coburn*, we vacated a compulsory nonsuit against a party, reasoning that if unnecessary expenses were incurred due to counsel's scheduling conflict, perhaps costs should be assessed against counsel instead.

We are troubled by the sequence of events leading up to the declaration of the mistrial. We observe that a mistrial would likely have been avoided if the trial court had ruled on all of the motions *in limine* prior to trial. That said, defense counsel's reference in opening statement to Mr. Larkin's receipt of disability benefits was undoubtedly improper and so prejudicial as to warrant a mistrial at that time. However, no one moved for

a mistrial at the time.[8]  Ms. Ferguson objected but apparently acquiesced in the court's decision to sustain her objection and strike the comment.  She did not request a curative instruction; Mr. Larkin did not even object.  We find incongruous Mr. Larkin's subsequent argument that the damage was incurable and that a mistrial was necessary when he did not even timely object.  Furthermore, given the plaintiffs' apparent lack of concern over defense counsel's improper comment, one can hardly fault the trial court for believing that it could cure any prejudice.

Trial continued.  Additional attorney's fees were incurred, as well as substantial expenses attendant to two expert witnesses.  Neither the trial court nor the plaintiffs point to any further objectionable conduct on the part of defense counsel.  However, upon substantiating that a male juror referenced worker's compensation, the trial court declared a mistrial.  Later, counsel fees and costs were assessed against defense counsel based on the court's apparent finding that the juror's reference to worker's compensation

---

[8] The railroad contends that Ms. Ferguson did not have standing to object and move for a mistrial as the reference pertained only to Mr. Larkin although it cites no authority in support of that position.  Actually, neither plaintiff sought a mistrial immediately after defense counsel's objectionable comments.  It was only later, well into Mr. Larkin's direct testimony, that Mr. Larkin objected and sought a mistrial.  The court denied the motion due to its belief that it could cure any prejudice with a proper jury instruction.  N.T. Trial, 6/10/13, at 110.

was triggered by counsel's reference to disability benefits in his opening statement.

We cannot discern from the record whether the male juror's remark about worker's compensation was made in reference to Mr. Larkin or whether it was connected in any way with defense counsel's objectionable reference to disability benefits. The trial court held a hearing but did not question any of the jurors. Additionally, we note that the trial court expressed frustration at the jurors' disregard of its instruction not to discuss the case or share notes and this conduct seemed to factor heavily into its decision to grant the mistrial. Thus, we find no basis for the court's conclusion that Mr. Larkin "incurred costs associated with litigating a case that had to be cut short due solely to error attributable to Appellant's counsel[.]" Trial Court Opinion, 6/17/14, at 10. Counsel's conduct was not dilatory within the meaning of § 2503(7), nor did it interfere with the trial court's inherent power to conduct its business in an orderly manner. For that reason, we vacate the order awarding attorney's fees and costs.

In light of the foregoing, we affirm the liability and damage award in favor of Mr. Larkin and vacate the award of attorney's fees and costs.

Judgment affirmed in part and reversed in part.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2015