**H. Ryan HUTCHINSON, Appellant**

v.

**PENSKE TRUCK LEASING COMPANY and Penske Corporation, Keystone Foods North America, Freightliner, LLC and McDonald's Corporation, Appellees**

**H. Ryan Hutchinson, Appellee**

v.

**Penske Truck Leasing Company and Penske Corporation, and Freightliner, LLC, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 1, 2005.

Filed May 17, 2005.

Reargument Denied July 21, 2005.

6. The Department maintains that the post-deprivation procedures provided by the Commonwealth comport with due process because Appellants have available administrative and judicial review, and during such review they are guaranteed the right to representation by counsel, oral and deposition testimony, affidavits and subpoenas, a written decision, and the like. *See* Brief for Appellees at 22–23. Absent access to the information necessary to test the accuracy of the amount of tax owed as stated by the Department, however, these facets of the post-deprivation process do not, by themselves, satisfy the *McKesson* standard as recited above.

 

John S. Bagby, Jr., Philadelphia, for Hutchinson.

Wilbur B. Ruthrauff, Philadelphia, for Freightliner.

Before: KLEIN, McCAFFERY and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 In this products liability action, the issue we decide is whether expert reports, summarizing studies of hundreds of other accidents, are admissible as evidence of a defendant's state of mind. We hold that, since the reports did not satisfy the "substantial similarity" test applicable to other accident evidence, they are not admissible. Because admission of the reports was reversible error, we remand for a new trial.

¶ 2 On March 1, 1999, Ryan Hutchinson was driving an eighteen-wheel tractor trailer when the trailer left the roadway, hit a guardrail and rolled down an embankment, pulling the cab with it. The accident occurred on a curved and narrowing ramp connecting New Jersey route 130 and interstate route 295, which was posted with signs advising a speed of thirty-five miles per hour and warning of a reduction to one lane. Prior to entering the ramp, Hutchinson had engaged the cruise control mechanism of the truck, setting it to sixty-two miles per hour in a fifty-five miles per hour zone. After the accident, Hutchinson was trapped in the cab, the roof of which had been crushed, for approximately two hours. When rescue workers extricated him from the cab, he was flown to a trauma center, where his left arm, which had protruded from the cab, was amputated.

¶ 3 Hutchinson claimed that the accident was caused by a failure of the truck's cruise control mechanism to disengage for

several seconds after he applied the brakes, causing the truck to continue at too great a rate of speed on the interstate entry ramp. He filed suit against Freightliner, L.L.C., the manufacturer and seller of the truck; Penske Truck Leasing Company (Penske), which purchased the truck; Keystone Foods, Hutchinson's employer, which had leased the truck from Penske; and McDonald's Corporation, which had hired Keystone Foods to deliver supplies. The action was commenced by a writ of summons on February 28, 2001. The complaint, filed on July 16, 2001, contained numerous averments.

¶ 4 Hutchinson's complaint against Keystone Foods and McDonald's Corporation was dismissed with prejudice on June 21, 2002. Trial of the remaining two defendants began on December 1, 2003 and lasted for eighteen days. At the end of the trial, strict liability was the only claim extant.

¶ 5 Hutchinson put forth two theories under his strict liability claim. First, he alleged that the cruise control system was defectively designed in two ways: it remained stuck in the on position after application of the brakes, preventing effective braking, and there was no failsafe mechanism in place to ensure effective disengagement if the primary mechanism should fail. Second, he alleged that the structural design of the cab was defective in that it lacked sufficient crashworthiness to allow the driver to escape serious injury after a roll-over accident.

¶ 6 The jury returned its verdict on December 24, 2003, awarding Hutchinson $5,500,000 against Freightliner and Penske in compensatory damages and $10,000,000 against Freightliner in punitive damages. Defendants Penske and Freightliner filed post-trial motions, seeking JNOV or, in the alternative, new trial or remittitur. The trial court denied the motions for JNOV or new trial, but vacated the punitive damage award to Freightliner, finding that it was not supported by evidence of record. Plaintiff Hutchinson also filed a post-trial motion, seeking delay damages pursuant to Pennsylvania Rule of Civil Procedure 238. The trial court granted this motion, thus increasing Hutchinson's compensatory damage award to a total of $5,974,237.

¶ 7 The parties filed cross-appeals. Hutchinson seeks review of the trial court's order that vacated the punitive damage award, contending that the trial court improperly substituted its judgment for that of the jury. Freightliner and Penske seek review of the order denying their motion for JNOV with respect to liability or, in the alternative, for a new trial, based primarily on allegations of improper admissions of evidence. In addition, they seek review of the trial court order that awarded delay damages.

¶ 8 In *Webb v. Zern*, 422 Pa. 424, 427, 220 A.2d 853, 854 (1966), our Supreme Court adopted the strict products liability doctrine of the Restatement (Second) of Torts § 402A. For a plaintiff to recover under a strict liability theory, he must prove only that the product at issue was sold in a defective condition, rendering it unreasonably dangerous, and that the defect was the proximate cause of his injuries. A product is defective when it is not safe for its intended use, because of a defect in its design or manufacture. *Lewis v. Coffing Hoist Div., Duff–Norton Co., Inc.*, 515 Pa. 334, 340, 528 A.2d 590, 592 (1987); *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 559, 391 A.2d 1020, 1027 (1978). In any product liability case grounded in strict liability, the product, and not the manufacturer's conduct, is on trial. *Phillips v. Cricket Lighters*, 576 Pa.

644, 841 A.2d 1000, 1006–07 (2003); [1] *Lewis, supra* at 341, 528 A.2d at 593; *Spino v. John S. Tilley Ladder Co.*, 448 Pa.Super. 327, 671 A.2d 726, 734–35 (1996), *aff'd*, 548 Pa. 286, 696 A.2d 1169 (1997).

¶ 9 The crashworthiness doctrine is a subset of strict products liability, most applicable to vehicular accidents. By this doctrine, the liability of manufacturers and sellers is extended to situations where the defect did not actually cause the injury-producing accident, but rather led to an increase in the severity of the injury incurred. *Colville v. Crown Equip. Corp.*, 809 A.2d 916, 922 (Pa.Super.2002), *appeal denied*, 574 Pa. 742, 829 A.2d 310 (2003).

¶ 10 The plaintiff in a strict product liability case may rely on evidence of other, similar accidents involving the product to prove defectiveness. *See, e.g. Spino, supra* at 735 (citing several appellate opinions that have reviewed the admissibility of evidence of other similar accidents in product liability cases). For "other accident" evidence to be admissible, the plaintiff must first establish that there is a "substantial similarity of conditions" between the other accidents and the accident that injured the plaintiff. *Id.* Courts have engaged in several inquiries in determining whether the other accidents were sufficiently similar to the accident at issue: Was the same instrumentality involved? Did the accidents occur under the same or similar conditions or circumstances? Did the accidents occur at substantially the same place? *See Valentine v. Acme Markets, Inc.*, 455 Pa.Super. 256, 687 A.2d 1157, 1163 (1997); *Spino, supra* at 735; *DiFrancesco v. Excam, Inc.*, 434 Pa.Super. 173, 642 A.2d 529, 535 (1994); *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 537 A.2d 334, 340–41 (1988) (en banc), *appeal denied*, 520 Pa. 594, 552 A.2d 249 (1988). We stress that the proponent of the evidence bears the burden to establish the similarity between the other accidents and the accident at issue *before* the evidence is admitted. *Valentine, supra* at 1163; *Spino, supra* at 735.

¶ 11 In product liability cases grounded in a theory of strict liability, it appears that a plaintiff may seek punitive as well as compensatory damages, although our Supreme Court has not definitively so held.[2] Punitive damages are awarded only in rare instances, to punish and deter outrageous, extreme, egregious behavior. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 169, 494 A.2d 1088, 1096–97 (1985), *abrogated on other grounds, Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989). Or-

1. We note that our Supreme Court in *Cricket Lighters* was divided. Chief Justice Cappy authored the lead opinion, reiterating the firm distinction in Pennsylvania law between strict liability and negligence theories as they apply to product liability cases. Justice Saylor wrote a concurring opinion, joined by Justices Castille and Eakin, taking issue with aspects of the lead opinion's statement that "negligence concepts have no place in strict liability law," particularly as related to product liability claims based on a design defect. 841 A.2d at 1012, 1014–15 (Saylor, J., concurring). Justice Nigro concurred in the result. Justice Newman wrote a concurring and dissenting opinion. Former Chief Justice Zappala did not participate.

2. *See Martin, supra* at 166–67, 494 A.2d at 1094; *see also Nigro v. Remington Arms Co., Inc.*, 432 Pa.Super. 60, 637 A.2d 983 (1993) (addressing evidentiary issues in the context of a punitive damages claim grounded in strict product liability, but not considering policy arguments for or against concurrent litigation of these claims). While we appreciate the tension inherent in a suit grounded in strict liability that includes a claim for punitive damages, any decision to disallow punitive damages under a strict liability theory should come from our Supreme Court.

dinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages. *Id.* at 170, 494 A.2d at 1097. Rather, to justify an award of punitive damages, the factfinder must determine that the defendant acted with a culpable state of mind, *i.e.*, with evil motive or reckless indifference to the rights of others. *SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 493–94, 587 A.2d 702, 704 (1991); *Martin, supra* at 169, 494 A.2d at 1097; *Nigro v. Remington Arms Co., Inc.*, 432 Pa.Super. 60, 637 A.2d 983, 989 (1993), *abrogated on other grounds by Aldridge v. Edmunds*, 561 Pa. 323, 333, 750 A.2d 292, 297 (2000). Since a culpable state of mind is required for an award of punitive damages, evidence of the defendant's knowledge or intention is highly relevant.

¶ 12 When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. *Spino, supra* at 734 (citing *Rogers v. Johnson & Johnson Products, Inc.*, 401 Pa.Super. 430, 585 A.2d 1004, 1007 (1990)). In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. *Aldridge v. Edmunds*, 561 Pa. 323, 333, 750 A.2d 292, 298 (2000); *Pittsburgh Construction Co. v. Griffith*, 834 A.2d 572, 585 (Pa.Super.2003), *appeal denied*, 578 Pa. 701, 852 A.2d 313 (2004); *Spino, supra* at 735. When a jury verdict *"may have been based* on improperly admitted evidence, the grant of a new trial is appropriate." *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.*, 348 Pa.Super. 285, 502 A.2d 210, 215 (1985) (emphasis in original); *see also Griffith, supra* at 585.

¶ 13 In reviewing a trial court's denial of a motion for a new trial or for JNOV, our standard is narrow: we will reverse the decision of the trial court only if we find an abuse of discretion or an error of law that controlled the outcome of the case. *Colville, supra* at 926; *Trude v. Martin*, 442 Pa.Super. 614, 660 A.2d 626, 630 (1995). Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will. *Colville, supra* at 926. In reviewing a denial of JNOV we must determine only "whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference . . . ." *Carter by Carter v. U.S. Steel Corp.*, 390 Pa.Super. 265, 568 A.2d 646, 651 (1990), *aff'd in part and rev'd in part on other grounds*, 529 Pa. 409, 604 A.2d 1010 (1992), *cert. denied*, 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 130 (1992). The trial court and the appellate court have the same standard with regard to JNOV: it is appropriately granted only when the case is so clear that "no two reasonable minds could fail to agree that the verdict was improper." *Id.* (quoting *Mitzelfelt v. Kamrin*, 379 Pa.Super. 121, 549 A.2d 935, 938 (1988)); *DiFrancesco, supra* at 531 (citing *Armstrong v. Paoli Memorial Hosp.*, 430 Pa.Super. 36, 633 A.2d 605, 608 (1993)).

¶ 14 We first consider Freightliner's contention that the trial court erred in denying its motion for a new trial. Freightliner's argument for a new trial is based primarily on its contention that the following evidence was improperly admitted: 1) three expert reports that summarized studies of heavy truck accidents; 2) evidence of repair and replacement of a clutch switch; and 3) evidence of alleged

spoliation by defendant Penske.[3]

 ¶ 15 We address first the three expert reports on heavy truck safety: a 1986 National Highway Traffic Safety Administration report entitled "Truck Occupant Protection;" a 1991 report by Dr. Kenneth Campbell of the University of Michigan Transportation Research Institute entitled "Heavy Truck Cab Safety Study;" and a 1992 analysis by Failure Analysis Associates, Inc., a private consulting firm that was hired by the Truck Crashworthiness Subcommittee of the Society of Automotive Engineers, entitled "Heavy Truck Crashworthiness." Each of these reports provided detailed analyses of and conclusions from studies of hundreds of truck accidents. The goals of the studies were to identify the most important factors in truck occupant fatalities and to provide recommendations to improve occupant protection and survivability. Freightliner contends that these studies were improperly admitted into evidence because they did not meet the "substantial similarity" test required to admit "other accident" evidence. See Valentine, supra at 1163; Spino, supra at 735; DiFrancesco, supra at 535; Majdic, supra at 340–41.

¶ 16 The trial court ruled that the reports were admissible to prove Freightliner's "state of mind," a relevant consideration with respect to the issue of punitive damages, even though they were not based on facts substantially similar to the facts of the present case. Trial Court Opinion, 6/25/04, at 15–16, 33. The trial court acknowledged that, because the reports did not pass the substantial similarity test, they were not admissible to prove product defect. Thus, the trial court drew a distinction between other accident evidence admitted to prove a product defect and the same evidence admitted to prove state of

mind. By admitting the reports to prove state of mind, the trial court erred.

¶ 17 In Spino, this Court held that the "substantial similarity" test applies whether the evidence of other accidents is offered to prove the existence of a defect, the cause of the accident, or notice of a defect. Spino, supra at 735. Despite Hutchinson's argument to the contrary, the "state of mind" that Hutchinson sought to prove with the expert reports was nothing more or less than Freightliner's knowledge—or notice—of the alleged lack of crashworthiness of its cabs. Given this evidentiary purpose, the proffered reports fit squarely within the holding of Spino, and the "substantial similarity" test must be satisfied for them to be properly admitted into evidence, whether to prove defect, causation or knowledge/notice.

¶ 18 We agree with Freightliner and with the trial court that the studies in question did not meet the substantial similarity test. Hutchinson presented no evidence as to the substantial similarity of the reports to the truck, the accident, or the circumstances in this case. Thus, none of the information in the reports was shown to be directly relevant to the truck and to the accident at issue. The burden to prove substantial similarity of other accidents lies with plaintiff-Hutchinson, and he failed to carry this burden.

¶ 19 Hutchinson makes several frivolous and illogical arguments in his attempts to show admissibility of the reports. For example, he contends that the expert reports do not constitute "other accident" evidence because he presented no single other accident to the jury but rather presented only the reports' conclusions from studies of hundreds of other accidents. To suggest, as Hutchinson does, that the un-

3. Because we find the admission of the three expert reports dispositive, we do not address Freightliner's claim that other evidence was improperly admitted.

derlying nature of this evidence of other accidents was transformed, merely because it was compiled, analyzed, and summarized to generate conclusions, defies both logic and common sense. Likewise, under the facts of this case, Hutchinson's attempt to draw a distinction between notice of a defect and notice of risk (or state of mind) is incomprehensible.

¶ 20 We hold that the reports of heavy truck accident studies constitute evidence of other accidents, and therefore the substantial similarity test must be satisfied prior to their admission as evidence. We further hold that the reports did not satisfy the substantial similarity test and were therefore improperly admitted to establish defect of the product, causation, or notice or knowledge or state of mind of the defendant. Hutchinson's contentions to the contrary are rejected.[4]

¶ 21 This holding does not, however, end our inquiry. For admission of the reports to constitute reversible error, they must have been harmful to the complaining party, here Freightliner. *Aldridge, supra* at 333, 750 A.2d at 298; *Pittsburgh Construction Co., supra* at 585; *Spino, supra* at

734. Our review of the record convinces us that the improperly admitted reports were harmful to Freightliner, in that the jury's verdict may very well have been affected by them.

¶ 22 Counsel for Hutchinson relied heavily on the reports in his cross-examination of two Freightliner employees. Counsel directed numerous questions to Freightliner employee Bruce Koepke about cab structure, crashworthiness, and driver survival, consistently and specifically referring to the reports' conclusions from studies of many · accidents. N.T. 12/15/03 a.m., at 40–63; 75–76; 108–09; N.T. 12/15/03 p.m., at 4–7; 17–18. For example, in the context of an exchange concerning the design of Freightliner's truck and how it may have affected plaintiff's injuries, Hutchinson's counsel quoted from the 1986 Report and then posed the following question to Mr. Koepke, who was testifying as the company's crashworthiness expert: "My question to you is why are you ignoring the 1986 Report?" N.T. 12/15/03 p.m., at 17. This is but one example of counsel's attempt to use the reports to show defective design as well as

---

4. Hutchinson repeatedly invokes *Cricket Lighters, supra,* for the proposition that a scholarly expert safety report is admissible as evidence of defendant's state of mind, without a finding of substantial similarity between the accidents underlying the report and the accident being litigated. Such an inference is inaccurate and improper. The product at issue in *Cricket Lighters* was a butane cigarette lighter that lacked a child safety device and was used by a child to start a fatal house fire. It was undisputed that the lighter at issue was not child-resistant. An expert report, which summarized the consequences, in lost lives and monetary cost, of fires caused by children playing with cigarette lighters, was offered by the plaintiff. The applicability of the substantial similarity test to the expert report was not raised in any appellate court, so it cannot be inferred that the report was not subject to this test. In fact, the only statement on this issue suggests that substantial similarity of the

products *was* considered: "Disposable butane lighters were involved in ninety-six percent of the fires in which the type of lighter was known." *Id.* at 373, 841 A.2d 1000. We agree with Hutchinson that Pennsylvania courts do not require that "other accident" evidence involve only products from the same manufacturer as the product at issue. *See DiFrancesco, supra* at 537. However, the court must give "thoughtful consideration" to the similarities—and to any differences—between the products involved in other accidents and the product at issue. *Id.* Only if the court finds substantial similarity, not only with respect to the products but also with respect to the circumstances surrounding the accidents, is the evidence of other accidents properly admitted. *See Valentine, supra* at 1163; *Spino, supra* at 735; *DiFrancesco, supra* at 535; *Majdic, supra* at 340–41. *Cricket Lighters* did not limit this well-established rule in any way.

Freightliner's knowledge or notice of the alleged defect.

¶ 23 Counsel also directed numerous questions on the reports, including quotes from the reports, to Freightliner employee Gary Rossow. N.T. 12/10/03 p.m., at 123–27, 131–33 (reading of stipulated deposition testimony). Furthermore, Hutchinson's counsel showed the jury a figure from one of the reports. N.T. 12/15/03 p.m., at 29. The figure shown to the jury depicted a cab-over-engine, which is a different design from the conventional cab of the FLD 120 (the model involved in the accident), but counsel failed to mention this distinction. Finally, counsel referred to and quoted from the reports in his closing argument. N.T. 12/23/03, at 17–20.

¶ 24 In all of these remarks, quotations, and questions, counsel unmistakably implied that the conclusions of the reports were directly applicable to the Freightliner FLD 120 truck involved in the accident—even though the FLD 120 was not included in the studies that gave rise to the reports and no evidence was presented to show that the models that were included in the studies were substantially similar to the FLD 120. We believe that these studies very likely affected the jury's verdict. Therefore, admission of the reports as evidence was not harmless error. We remand to the trial court for a new trial on liability as well as damages.

 ¶ 25 Although we remand for a new trial based on our determination of error in admission of the three truck safety reports, we also feel compelled to discuss another potential reason for remand: Hutchinson's counsel's repeated violations of a pre-trial court order concerning evidence of foreign crash test standards. The trial court ruled, orally and in writing before the trial, that evidence of European crash test standards and of Freightliner's alleged failure to meet those standards was not admissible. The record supports the trial court's conclusion that Hutchinson's counsel "repeatedly, blatantly, and intentionally" violated the court's order. Trial Court Opinion, 6/25/04, at 18. The trial judge stated that she could not ignore these violations and neither can we.

¶ 26 We agree with the trial court that "the numerous interjections of this precluded evidence [on European standards] was prejudicial and harmful to Defendant Freightliner and, conceivably, adversely affected the verdict as it related to punitive damages." Trial Court Opinion, 6/25/04, at 18. We go farther than the trial court and conclude that counsel's repeated violations constitute reversible error with regard to not only the issue of punitive damages but also liability.

 ¶ 27 Freightliner next contends that the trial court erred in failing to grant its motion for JNOV. We do not find this to be one of those cases so clear that there can be no reasonable disagreement about the verdict, and therefore we do not grant Freightliner's appeal for relief in the form of JNOV. *See DiFrancesco, supra* at 531. Two of Hutchinson's experts gave testimony about the alleged defects in the FLD 120's cruise control system and crashworthiness. Freightliner attempted to refute this testimony, *inter alia*, by positing that Hutchinson acted with extreme recklessness. The conflicting testimony raised questions of fact and credibility, which are the province of the jury. The trial court did not err in failing to grant Freightliner's motion for JNOV.

¶ 28 In summary, we remand this case to the trial court for a new trial on liability and damages. Because of our disposition of the parties' claims above, we need not address further Hutchinson's allegation of trial court error in vacating the jury's award of punitive damages. His entire

claim for punitive damages was based on the expert reports of other accidents, which we have held were erroneously admitted.

¶ 29 Remanded. Jurisdiction relinquished.