J-A12020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KELLY J. MARTEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NOURYON CHEMICALS, LLC, | : | |
| MONSANTO COMPANY, NOURYON | : | |
| SURFACE CHEMISTRY, LLC, | : | No. 1259 EDA 2024 |
| NOURYON USA, LLC | : | |
| | : | |
| | : | |
| APPEAL OF: MONSANTO COMPANY | : | |

Appeal from the Judgment Entered April 12, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  210900084

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 25, 2025**

Appellant, Monsanto Company ("Monsanto"), appeals from the judgment entered in the Philadelphia County Court of Common Pleas on April 12, 2024, following a jury verdict in favor of Appellee, Kelly J. Martel, in this products liability action.  Monsanto challenges the trial court's denial of its motion to transfer venue pursuant to the doctrine of forum *non conveniens*, the denial of its motion judgment notwithstanding the verdict ("JNOV") based on Monsanto's allegations of federal preemption and insufficient evidence, and claims that the jury's damages award was excessive.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On September 23, 2021, Ms. Martel filed a products liability complaint against Monsanto and

Nouryon Surface Chemistry, LLC ("Nouryon") alleging that she developed follicular lymphoma, a type of non-Hodgkin Lymphoma ("NHL"), from exposure to Monsanto's weed killer, Roundup. In particular, Ms. Martel alleged that Roundup contained two ingredients that, when combined, increased Roundup's toxicity: glyphosate, produced by Monsanto, and polyethoxylated tallow amine ("POEA"), produced by, among others, Nouryon and its predecessors.

The Philadelphia County Court of Common Pleas added to its mass tort program the lawsuits involving a plaintiff's use of Roundup and issued, *inter alia*, a case management order for those cases. Pursuant to the case management order, on January 26, 2023, Ms. Martel filed a short-form complaint asserting claims against Monsanto and Nouryon for: (1) strict liability design defect; (2) strict liability failure-to-warn; (3) negligence; (4) negligent design; and (5) negligent marketing. Ms. Martel also asserted a claim for breach of implied warranties against Monsanto only.

On July 24, 2023, Monsanto and Nouryon moved to transfer the case to Westmoreland County under the doctrine of forum *non conveniens*. Monsanto and Nouryon asserted that court should transfer the case because "[a]ll the witnesses and evidence—the places where [Ms. Martel] lives, works, and allegedly purchased and used Roundup-branded herbicides, and received medical treatment for her alleged injuries—are located far from Philadelphia County. [Ms. Martel's] claims and alleged damages have **no relationship** to Philadelphia County[.]" Motion, 7/24/23, at 1 (emphasis in original).

Monsanto and Nouryon claimed that Philadelphia County was an oppressive venue and inconvenient to all parties and witnesses because

> [f]orcing Defendants to conduct discovery hundreds of miles from the location of the evidence is an oppressive burden. The burden becomes more significant at trial, where Defendants will be prejudiced by Plaintiff's choice of venue. Obtaining live and in-person trial testimony in Philadelphia County will be difficult in these cases—if not practically impossible—because Defendants cannot reliably compel case-specific, non-party fact witnesses to travel hundreds of miles to spend an indefinite amount of time in Philadelphia waiting for their turn to testify.

*Id.* Monsanto and Nouryon further claimed that Monsanto's business is located in Missouri, Nouryon's headquarters is in Montgomery County, and noted that only one of the nine current or former Nouryon employees whose depositions Ms. Martel requested work in Montgomery County while the others are located in Illinois, Kansas, Texas, Tennessee, New York, and New Jersey. *Id.* at 5. They also provided a list of "non-party witnesses identified by" Ms. Martel whom they anticipated "will offer testimony or evidence directly relevant to the claims and defenses." *Id.* at 7. This list included Ms. Martel's treating physicians, her parents, and her son. Monsanto and Nouryon explained their understanding of the nature of each witness' testimony, but did not provide any affidavits from witnesses who they purport would face an oppressive burden if venue remained in Philadelphia County.

Ms. Martel filed an answer in opposition to the motion to transfer venue. Monsanto and Nouryon then filed a reply to which they attached excerpts from deposition testimony provided by Ms. Martel's treating oncologist, Dr. Rahul Kumar, and Ms. Martel's son. When asked, both testified generally that it

would be more convenient for them if the trial in the instant matter were not in Philadelphia.[1]  The trial court denied the motion on September 19, 2023.

Meanwhile, on August 29, 2023, Monsanto and Nouryon filed motions for summary judgment on the grounds that Ms. Martel's failure-to-warn claim was preempted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, *et seq*.  The trial court denied these motions on October 19, 2023.

Shortly thereafter, in November 2023, the case proceeded to a three-week jury trial.  The jury, crediting the evidence and testimony presented by Ms. Martel, including the expert causation testimony of Dr. Barry S. Levy and Dr. Irving Coy Allen, returned a verdict of $3.5 million in Ms. Martel's favor.[2]  The jury apportioned 92.5% of fault to Monsanto and 7.5% to Nouryon.

Monsanto and Nouryon filed post-trial motions, which the trial court denied.  Ms. Martel sought delay damages, which the trial court awarded in the amount of $44,363.01.

_____

[1] They also attached one page of the deposition testimony provided by another of Ms. Martel's treating oncologists, Dr. Khanh Tuan Nhuyen.  In the attached excerpt, Dr. Nhuyen merely affirmed that he was participating in the deposition from the "UPMC Human office in Monroeville, Pennsylvania." Reply, 8/29/23, at Exh.2 p.2 (unpaginated).

[2] The verdict is comprised of $500,000 in compensatory damages and $3 million in punitive damages.

Following the entry of the judgment of $3,544,363.01, Monsanto filed the instant appeal.[3] Both Monsanto and the trial court complied with Pa.R.A.P. 1925.

Monsanto raises the following issues on appeal:

1. Is JNOV required because [Ms. Martel's] claims are preempted?

2. Is JNOV required because [Ms. Martel] failed to introduce sufficient evidence of specific causation?

3. Is JNOV or remittitur required because the punitive damages award was unwarranted, manifestly excessive, and improperly cumulative?

4. Is a new trial in Westmoreland County required because the trial court erroneously denied Monsanto's motion to transfer venue?

Monsanto's Brief at 5-6 (reordered for ease of disposition).

In Monsanto's first three issues, it challenges the trial court's denial of its post-trial motions for JNOV. We review the denial of a request for JNOV for an error of law that controlled the outcome of the case or an abuse of discretion. *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa. Super. 2005). In this context, an "[a]buse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." *Id.*

---

[3] Nouryon also filed an appeal from the entry of judgment against it, which is pending at Docket No. 2036 EDA 2024.

When reviewing the denial of a request for JNOV, the appellate court examines the evidence in the light most favorable to the verdict winner. ***Thomas Jefferson Univ. v. Wapner***, 903 A.2d 565, 569 (Pa. Super. 2006) (citation omitted). Thus, "the grant of [JNOV] should only be entered in a clear case[.]" ***Id.*** (citation omitted).

There are two bases upon which a movant is entitled to JNOV: "one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Rohm and Haas Co. v. Continental Cas. Co.***, 781 A.2d 1172, 1176 (Pa. 2001) (citation omitted). When an appellant challenges a jury's verdict on this latter basis, we will grant relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." ***Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.***, 126 A.3d 959, 967 (Pa. Super. 2015) (citation omitted).

**\*\*\***

Monsanto first contends that it is entitled to JNOV because the doctrine of federal preemption bars Ms. Martel's failure-to-warn claim. Monsanto's Brief at 22-30. In support, Monsanto relies on, *inter alia*, the recent decision of the Third Circuit Court of Appeals in ***Schaffner v. Monsanto Corp.***, 113 F.4th 364 (3d. Cir. 2024), in which that Court, interpreting Pennsylvania law, found that a Pennsylvania duty to warn claim "imposes requirements that are different from those imposed under FIFRA, and [the plaintiff's claim] is

therefore preempted by FIFRA."[4]   Monsanto's Brief at 24-25 (quoting **Schaffner**, 113 F.4th at 371).

A panel of this Court recently addressed the issue of whether FIFRA preempts a Pennsylvania plaintiff's failure-to-warn claims against Monsanto. **See Caranci v. Monsanto Company**, ___ A.3d ___, 2025 WL 1340970 (Pa. Super. filed May 8, 2025).   In that case, Monsanto—raising the same allegation of trial court error and advancing the same arguments as set forth in the instant appeal—urged this Court to adopt the reasoning and holding of the Third Circuit Court of Appeals in **Schaffner**.   This Court declined to do so and, instead, concluded that the plaintiffs' failure-to-warn claims were not preempted by FIFRA.   **Id.** at *9.   The **Caranci** Court explained that our state law failure-to warn-claim is not preempted by FIFRA because Pennsylvania's cause of action "does not impose any requirement that is in addition to the requirements imposed by FIFRA."   **Id.** at *9.   This holding is consistent with numerous other state and federal court decisions and we are bound by it. Monsanto's federal preemption claim, thus, fails.

*****

In its second issue, Monsanto challenges the sufficiency of Ms. Martel's evidence that established that Roundup caused her cancer.   Monsanto's Brief at 30-46.   Monsanto first asserts that Ms. Martel failed to present evidence of

_____

[4] We are "not bound by decisions of the federal Courts of Appeals [although] we may, and at times, do look to them for guidance." **Miller v. Southeastern Pennsylvania Transp. Auth.**, 103 A.3d 1225, 1231 (Pa. 2014).

that her "handful" of exposures to Roundup were sufficient to cause her cancer. *Id.* at 31. In particular, Monsanto challenges the importance that Ms. Martel's expert Dr. Levy placed on certain epidemiological studies and argues that Dr. Levy impermissibly "extrapolated from the alleged 'positive association' between glyphosate and cancer to conclude that, because [Ms. Martel] **used** Roundup a certain number of times—with no regard for the length of those times or her level of exposure during that use—[Roundup] was the specific cause of her cancer." *Id.* at 37.

Monsanto also contends that the trial court should have entered JNOV because Dr. Levy failed to rule out alternative causes of Ms. Martel's cancer, *i.e.*, her history of smoking and red hair dye use. *Id.* at 40. Monsanto claims that Ms. Martel could not meet her burden of proof given Dr. Levy's inability to rule out other causes of Ms. Martel's cancer, and his "anemic testimony" that, "he could not opine that [Ms. Martel] 'would never have gotten NHL' had 'she never used Roundup.'"[5] *Id.* at 41. For these reasons, Monsanto contends Ms. Martel's evidence was insufficient and required entry of JNOV.

In Pennsylvania, a plaintiff is required to show that a defendant's misconduct or defective product is "a" substantial factor, not "the" factor, in

---

[5] To the extent that this Monsanto supports this claim with argument that, because Dr. Levy could not eliminate alternative causes of Ms. Martel's cancer, the trial court should have excluded Dr. Levy as an expert witness, Monsanto's Brief at 44, we decline to address it because Monsanto did not raise any independent challenge to the trial court's evidentiary rulings or direct this Court to the place in the record where it objected to Dr. Levy's qualification as an expert witness.

causing her injury. ***Rost v. Ford Motor Co.***, 151 A.3d 1032, 1050 (Pa. 2016). Our Supreme Court has "consistently held that multiple substantial causes may combine and cooperate to produce the resulting harm to the plaintiff." ***Id.*** at 1051. Simply, a plaintiff need not "exclude every other possible cause for [her] injury." ***Id.***

At trial, Ms. Martel presented general causation testimony from Dr. Allen and both general and specific causation testimony from Dr. Levy. In addition to providing lengthy testimony regarding their professional backgrounds and explaining the methodologies that they used and the studies that they relied on to develop their conclusions, both Dr. Allen and Dr. Levy concluded to a reasonable degree of medical certainty that glyphosate can cause or contribute to causing NHL. N.T., 11/15/23 PM Session, at 81, 96-97; N.T., 11/16/23 PM Session, at 29-33, 117. Dr. Levy also testified that Roundup does "impact the process carcinogenicity in human blood cells[,] the type of cells that become lymphoma in people." N.T., 11/16/23 PM Session, at 33.

With respect to specific causation, Dr. Levy explained that he reviewed Ms. Martel's medical, personal, and professional history to develop a differential diagnosis to determine the cause of her cancer. Dr. Levy testified that, to a reasonable degree of medical certainty, that Ms. Martel's Roundup exposure, her history of cigarette smoking, and her hair dye use were "substantial contributing factors" that caused her NHL. N.T., 11/17/23 AM Session, at 56. He explained that each carcinogen operated independently, and that Ms. Martel developed NHL as a result of her combined exposure to

the three carcinogens. ***Id.*** at 58, 60. This evidence, which the jury was free to accept or reject, was sufficient to support the jury's conclusion that Roundup was "a" substantial factor in causing Ms. Martel's NHL and belies Monsanto's claim that Ms. Martel did not present sufficient evidence from which the jury could find Monsanto liable.[6] Monsanto is, thus, not entitled to relief on this claim.

*** 

In Monsanto's third issue, it claims that the trial court erred in denying JNOV or remittitur because the $3 million punitive damages award was unwarranted, manifestly excessive, and improperly cumulative. Monsanto's Brief at 55-67.

Pennsylvania juries "enjoy[] discretion in the fixing of punitive damages." ***Bert Co. v. Turk***, 298 A.3d 44, 61 (Pa. 2023). That discretion is, however, subject to the limitations of the Fourteenth Amendment's Due Process Clause, which imposes limits on punitive awards based on

---

[6] Monsanto also claims: (1) Dr. Levy's methodology for calculating Ms. Martel's exposure to Roundup was flawed because it did not consider the "dose" to which Ms. Martel was exposed "in any rigorous way" and the studies upon which Dr. Levy relied to calculate Ms. Martel's glyphosate exposure had "methodological red flags," and (2) even if Dr. Levy's methodology was not itself flawed, Ms. Martel's Roundup exposure was not sufficient to cause her cancer. Monsanto's Brief at 33, 35, 38. As raised, these claims do not, as Monsanto asserts, implicate the sufficiency of the evidence. Rather, these issues implicate Dr. Levy's methodology, the admissibility of his expert conclusions, and the weight the jury gave to his testimony. Accordingly, we decline to address this challenge within the context of Monsanto's sufficiency of the evidence claim.

"[e]lementary notions of fairness . . . dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also to the severity of the penalty that may be imposed." *Id.* at 48 n.2 (internal quotation marks and citation omitted).

In *Bert Co.*, our Supreme Court recently explained punitive damages as follows:

> Punitive damages have long been a part of traditional state tort law. The common-law method for assessing punitive damages has been recognized in every state and federal court for over two hundred years - since before enactment of the Fourteenth Amendment in 1868. They have been described as "quasi-criminal," and could be described as "private fines" intended to punish the defendant and to deter future wrongdoing. A jury's [or trial court's (in the case of a non-jury trial)] assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation. Punitive damages are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.

*Id.* at 58-59 (citations, some quotation marks, original brackets, and parentheses omitted).

We review an award of punitive damages for an abuse of discretion. *Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1157 (Pa. Super. 2013). "Under Pennsylvania law the size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 419 (Pa.

- 11 -

Super. 2004) (citation and original quotation marks omitted); *see also*

*Grossi*, 79 A.3d at 1157.

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his[, or her,] reckless indifference to the rights of others. In assessing punitive damages, the trier[-]of[-]fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause[,] and the wealth of the defendant.

*Bert Co.*, 298 A.3d at 61-62 (quoting Restatement (Second) of Torts §

908(2)). *See also Hollock*, 842 A.2d at 419 (citing cases addressing Section

908(2); *Grossi*, 79 A.3d at 1157 (same). "Punitive damages awards must be

tailored to each defendant." *Bert Co.*, 298 A.3d at 71.

\*

Monsanto raises numerous sub-claims challenging the punitive damages

award. First, Monsanto claims punitive damages were improper because

Roundup is approved for use by the EPA and the evidence demonstrated that

Monsanto acted in accordance with scientific consensus and, therefore, lacked

the "evil motive or reckless indifference to the rights of others" necessary to

award punitive damages. Monsanto's Brief at 56-60 (quoting *Feld v.*

*Merriman*, 485 A.2d 742, 747-48 (Pa. 1984)).

Monsanto has not cited to any controlling precedent to support its

argument that implies that a fact-finder as a matter of law may not impose

punitive damages when the defendant acted in accordance with scientific

consensus, and we have found none. In fact, this Court has held that

"compliance with industry and governmental safety standards **does not**,

standing alone, automatically insulate a defendant from punitive damages." *Daniel v. Wyeth Pharmaceuticals, Inc.*, 15 A.3d 909, 932 (Pa. Super. 2011) (emphasis added, internal quotation marks omitted) (quoting *Phillips v. Cricket Lighters*, 883 A.2d 439, 447 (Pa. 2005)). Simply because Monsanto introduced evidence at trial that it complied with industry standards and scientific consensus, and that Roundup is EPA-approved, does not preclude the jury from awarding punitive damages and does not require the trial court to enter JNOV.

Additionally, we note that Monsanto is, in essence, arguing that because it introduced evidence of its compliance, the jury, when considering whether to impose punitive damages, should have found its evidence of compliance dispositive and disregarded any evidence Ms. Martel presented. This argument challenges the weight that the jury placed on the evidence of compliance. We cannot and will not reweigh the evidence.

\*

Next, in support of its claim that the amount of punitive damages awarded was grossly and unconstitutionally excessive, Monsanto asserts that its conduct was not reprehensible because no evidence suggested that Monsanto demonstrated reckless disregard for the health or safety of others, knew that Roundup, in fact, caused cancer, took advantage of Ms. Martel, or acted with malice. Monsanto's Brief at 61-62. Monsanto also notes that the 6:1 ratio of punitive to compensatory damages is "beyond the outermost limit of the due process guarantee." *Id.* at 62. Monsanto next claims that the

$500,000 compensatory damages award for non-economic damages alone "already contained a punitive component." *Id.* at 63. Characterizing the compensatory damages award as "substantial," Monsanto argues that **any** multiple of that amount violates due process." *Id.* at 63 (emphasis in original). Monsanto also claims as proof that its conduct was "reasonable" that the EPA never sought penalties or brought an enforcement action against it. *Id.* at 64.

Monsanto's claim that its conduct was not reprehensible for the reasons it lists is, in essence, a challenge to the weight the jury gave to the evidence presented at trial. The jury heard other evidence about Monsanto's conduct and placed more weight on that evidence. Thus, we decline to reweigh the evidence and do not agree that the jury abused its discretion in awarding $3 million in punitive damages on that basis.

In addition, Monsanto's suggestion—that the $500,000 the jury awarded for non-economic compensatory damages must necessarily include a punitive component—is mere conjecture and not grounds for relief. We are likewise unpersuaded by Monsanto's claim that a punitive damages award in an amount six times the compensatory damages award is inherently violative of due process. In fact, the United States Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula[.]" *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425-25 (2003) (citation omitted). The *State Farm* Court further noted that "single-digit multipliers" like the one in the instant case,

"are more likely to comport with due process" than multiple-digit multipliers. *Id.* at 410.

\*

Monsanto next contends that the punitive damages award was unconstitutionally cumulative based on Monsanto having already paid more than $100 million in punitive damages to plaintiffs in other cases. Monsanto's Brief at 65-66. Because the $3 million punitive damage award in this case improperly adds to the amount of punitive damages paid as punishment for the same conduct, and thousands of Roundup cases remain pending, Monsanto claims the award in this case implicates due process concerns. *Id.* at 65-67.

As with Monsanto's prior claims, this claim likewise fails as Monsanto has not cited any authority requiring, as a matter of law, that the trial court remit the punitive damages award simply because juries in other cases awarded other plaintiffs punitive damages against Monsanto. Thus, we conclude that the trial court neither abused its discretion nor erred as a matter of law in declining to mold the verdict here.

In sum, our review confirms that, in light of the totality of the record developed at trial, the jury properly exercised its discretion in awarding Ms. Martel $3 million in punitive damages and the trial court did not abuse it discretion or err as a matter of law in denying Monsanto's motion for a new trial or JNOV based on the amount of punitive damages awarded.

\*\*\*

In its final issue, Monsanto claims that the trial court erred in denying its motion to transfer venue from Philadelphia County to Westmoreland County pursuant to Pa.R.Civ.P. 1006. Monsanto's Brief at 46-55. Monsanto avers that Ms. Martel's choice of forum was "oppressive or vexatious." *Id.* at 47.

"We review a trial court's decision granting [or denying] a motion for change of venue based on *forum non conveniens* for an abuse of discretion." *James v. Wal-Mart Distribution Center*, 310 A.3d 316, 319 (Pa. Super. 2024). The party seeking dismissal on *forum non conveniens* grounds bears the burden of proof. *Failor v. FedEx Ground Package System, Inc.*, 248 A.3d 527, 535 (Pa. Super. 2021). The trial court "shall give the plaintiff's choice of forum great weight[.]" *James*, 310 A.3d at 320.

"[A] defendant seeking to transfer venue bears the burden of placing detailed information on the record to support transfer." *Ehmer v. Maxim Crane Works, L.P.*, 296 A.3d 1202, 1207 (Pa. Super. 2023). When the defendant requests transfer based on an allegation of witness hardship, "the defendant must (1) identify the allegedly encumbered witness[es], and (2) make a general statement of what testimony that witness will provide." *Id.* The testimony must be "relevant and necessary **to the defense**." *Id.* at 1208 (emphasis added).

In analyzing the proof offered on the record, "factors such as the burden of travel, time out of the office, disruption to business operations, and the

- 16 -

greater difficulty involved in obtaining witnesses and sources of proof" are relevant. ***Bratic v. Rubendall***, 99 A.3d 1, 9 (Pa. 2014) (citation omitted). A defendant satisfies his burden by providing detailed information specifying which of **his** witnesses will experience hardship and an explanation why trial in the chosen county presents greater hardship to those witnesses than the proposed alternative. ***See***, ***e.g.***, ***id.*** at 4, 9-10 (affirming transfer where eight **defense** witnesses presented affidavits explaining that business activities made it more burdensome to attend trial 100 miles from the county of their location and the location of the events underlying the abuse of process claim); ***Smith v. CMS West, Inc.***, 305 A.3d 593, 597-98 (Pa. Super. 2023) (affirming transfer to the county encompassing the subject cement manufacturing facility 300 miles away based on **defense** affidavits from eyewitness facility employees and manager claiming hardship due to caregiver responsibilities, furlough, and unemployment, despite opposing affidavits from other witnesses showing lack of hardship); ***Wood v. E.I. du Pont de Nemours and Co.***, 829 A.2d 707, 712 (Pa. Super. 2003) (affirming transfer where the defendant presented detailed information regarding seven **defense** employees showing that transfer would reduce the distance employees would have to travel from 190 miles to less than two miles).

In support of its claim that Philadelphia County is an "oppressive or vexatious" forum for Monsanto, it highlights that all of Ms. Martel's primary care and cancer doctors work in Westmoreland County or Allegheny County, and that Ms. Martel agreed generally that it would be more convenient for her

if the trial took place closer to her home. Monsanto's Brief at 47-48. Monsanto also claims that public policy considerations militate in favor of transferring the case to Westmoreland County. *Id.* at 52. In particular, Monsanto asserts that permitting this case to proceed in Philadelphia, which has no connection to this case, constitutes a "recipe for forum-shopping." *Id.*

The trial court found that Monsanto and Nouryon failed to meet the heavy burden of proving that transfer to Westmoreland County was required due to witness hardship. The court explained that, in providing only "a single paragraph in their unverified motion containing conclusory statements of hardship that their employees would experience if the case proceeded in Philadelphia" they "presented no proof of hardship to their own employees or witnesses." Trial Ct. Op., 7/3/24, at 8-9. The court noted the absence "from the motion of any affidavit, testimony, or other statements from the referenced 'employees.'" *Id.* at 9. The court also observed that Monsanto and Nouryon neglected to explain "why trial in Philadelphia County would impose [a] greater burden then Westmoreland County when such employees are ostensibly located in Missouri, Kansas, Texas, Tennessee, New York, and New Jersey[]" as "[r]eference to these locations alone, without further detail, merely suggested that the unidentified employees would have been required to travel significant distances regardless of whether trial occurred in Philadelphia County or Westmoreland County." *Id.*

The trial court also found that Monsanto and Nouryon failed to explain how any of the witnesses identified in their motion were relevant and

necessary to the defense. The court found that the boilerplate summaries of the witnesses' anticipated testimony provided by Monsanto and Nouryon "contained only speculative, generalized observations applicable to nearly any physician" regarding Ms. Martel's diagnosis, treatment, medical history, risk factors, exposures, and cause of her NHL. *Id.* at 11. Further, the court found the summaries of the anticipated testimony of Ms. Martel's parents and son "contained similarly broad descriptions" and "the excerpts of testimony . . . revealed no further information on the significance of these witnesses to the case, let alone the defense." *Id.* The court, therefore, concluded that Monsanto and Nouryon presented "inadequate evidence to conclude that any of these witnesses were 'key' to the case." *Id.*

Last, the court found that Monsanto and Nouryon's focus on the alleged hardship a trial in Philadelphia County posed to Ms. Martel's witnesses was misplaced, but even if the court were to consider the burden to these witnesses, Monsanto and Nouryon failed to demonstrate significant hardship to warrant transfer. *Id.* at 9-10. We agree with each of these findings.

Following our review of the record and the relevant case law, we discern no abuse of discretion in the trial court's determination that Monsanto and Nouryon failed to satisfy its burden of demonstrating that Philadelphia is an oppressive or vexatious forum to its witnesses. We, therefore, affirm the order denying their motion to transfer for *forum non conveniens*.

***

In sum, having found each of Monsanto's issues lacking merit, we affirm the judgment in favor of Ms. Martel.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/25/2025